2006 OK CIV APP 107

**COXCOM, INC., Plaintiff/Appellant,**

v.

**OKLAHOMA SECONDARY SCHOOLS ATHLETIC ASSOCIATION; and Family Broadcasting Group, Inc. d/b/a KSBI Television Network, Defendants/Appellees.**

**No. 103,036.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Aug. 4, 2006.

Patrick M. Ryan, Phillip G. Whaley, Daniel G. Webber, Jr., Matthew C. Kane, Ryan, Whaley & Coldiron, Oklahoma City, OK, for Plaintiff/Appellant.

George S. Corbyn, Jr., Kathryn M. Zynda, Corbyn Law Firm, Oklahoma City, OK, for Defendant/Appellee, Oklahoma Secondary Schools Athletic Association.

Curtis M. Long, John D. Russell, Deborah V. Melikian, Fellers, Snider, Blankenship, Bailey & Tippens, P.C., Tulsa, OK, for Defendant/Appellee, Family Broadcasting Group, Inc., d/b/a KSBI Television Network.

Opinion by CAROL M. HANSEN, Judge.

¶1 In June 2002, CoxCom, Inc. [Cox], an Oklahoma cable TV operator, and Oklahoma Secondary Schools Athletic Association [OSSAA] entered into a contract regarding the telecast rights for OSSAA state championship events. [the 2002 Cox Contract]. OSSAA supervises and regulates secondary school activities, including athletic contests throughout Oklahoma. The 2002 Cox Contract was a statewide contract, giving Cox the exclusive right to telecast "any or all" OSSAA championship events for a three year term from August 2002 through August 2005.[1] The 2002 Cox Contract provided that "Cox shall have first right of refusal on renewal beyond August 2005." There was no territorial limit to Cox's exclusive right to telecast OSSAA's members' events under the 2002 Cox Contract.[2]

¶2 On September 2, 2005, after the 2002 Cox Contract expired on August 31, 2005, Cox submitted a new contract (essentially updating the dates while retaining the terms of the 2002–2005 contract). On September 6th, the Family Broadcasting Group [FBG], d/b/a KSBI–TV, an independent commercial television station [KSBI] presented OSSAA with a proposal to telecast OSSAA's member games on KSBI's independent commercial

---

1. In September 2005, Cox's broadcast coverage area encompassed 13 counties in Oklahoma.

2. Most of the high schools in Oklahoma, and all of the schools who participate in high school athletics, are members of the OSSAA. Presently the OSSAA consists of 472 separate member schools across Oklahoma, the majority of which lie in rural areas of the state.

station throughout its coverage area.[3] On September 7th, the OSSAA board of directors voted to accept KSBI's proposal to telecast OSSAA state championship events.[4] On September 9th, by voice mail, Mr. Rennels, executive director of the OSSAA board, advised Mr. Hess, director of production at Cox, of the board's decision to to go forward with KSBI's proposal.

¶ 3 On September 12th, Mr. Hess sent Mr. Rennels a fax asking that Cox be allowed the opportunity to exercise its "first right of refusal" under the 2002 Cox Contract. In conversations on September 12th and 13th, Mr. Rennels advised Mr. Hess that KSBI's wider broadcast area was the primary basis for the board's decision to accept KSBI's proposal. On September 19th, Mr. Rennels faxed Mr. Hess a letter which provided, in part:

"The Board, in making the decision to go with the other company stated the strongest point of the agreement was the opportunity for the contests to be shown in a much wider geographic area. They reach 47 counties and you state that you only reach 13. . . . I will extend Cox Communications the opportunity to match the proposal by the third party provided you can respond to OSSAA within a 24 hour period your plan to reach the additional areas of the state with TV coverage. . . . If I have not received assurance from Cox of their ability to match this portion of the agreement, I will move forward with the other company."

¶ 4 In response, Mr. Hess stated:

I appreciate the opportunity you have given us to submit a plan. . . . I will have that plan to you by 1 p.m. tomorrow, September 20. . . . Thanks again for the opportunity.

On the same date, in an e-mail to Mr. Hess, Mr. Rennels stated that OSSAA would need to know how Cox would meet the coverage area situation and advised him specifically that it was the coverage area, not actual viewers that was of interest to the OSSAA.

¶ 5 On September 20th, Cox's proposal stated the coverage area would be "detailed at a later date." On September 22nd, OSSAA signed a contract with KSBI [KSBI agreement] granting KSBI the exclusive right to broadcast OSSAA's playoff events. The following day KSBI issued a press release announcing it would begin broadcasting high school championship sports on its station. It then began an advertising campaign regarding the broadcasts and began selling advertising and incurring production costs.

¶ 6 On November 18, 2005, on the eve of the high school football playoff games, and nearly two months after the KSBI agreement was signed, Cox filed a lawsuit against OSSAA and FBG d/b/a KSBI, alleging breach of contract, unfair competition, wrongful interference with contractual relations, and specific performance. Cox also sought an injunction, enjoining OSSAA from ". . . the foregoing conduct."

¶ 7 Contemporaneously with its petition, Cox filed a Motion for Temporary Restraining Order and Preliminary Injunction and Emergency Hearing, alleging ". . . the dispute involves television rights of certain games to be played beginning November 25, 2005, . . . Plaintiff requests a hearing no later than Wednesday, November 23, 2005." Both in its petition and its motion, Cox alleged that unless OSSAA ". . . is enjoined from breaching the terms of its contract with Plaintiff and failing to permit Plaintiff any opportunity to exercise its right of first refusal, . . . it would be irreparably harmed by (a) loss of local identity, (b) loss of community goodwill, (c) loss of programming, (d) and OSSAA would be unlikely to be able to pay any damages award." Cox further alleged it has no adequate remedy at law. Cox prayed, among other things, that the trial court "[e]nter temporary restraining orders, prelimi-

3. KSBI is in the business of selling air time to sponsors of programming. It has the ability to provide over-the-air coverage to all households within range of its broadcast signal in the fifty-one counties it currently serves. KSBI–TV viewers are not required to subscribe to its service in order to get KSBI–TV coverage.

4. The OSSAA board meeting minutes do not reflect the submission or discussion of Cox's new contract.

nary injunctions and permanent injunctions, enjoining OSSAA, directly or indirectly, from: ... [p]reventing Plaintiff from exercising its exclusive right to televise the 2005 state high school football semifinal and championship games."

¶ 8 On January 5, 2006, following hearings on November 23rd and December 16th and 19th, the trial court overruled Cox's Motion for Preliminary Injunction. At the conclusion of the hearing, the trial court stated Cox had not met its clear and convincing burden of proof regarding its likelihood of success on the merits, nor had it met its burden of proof that it would suffer irreparable harm absent an injunction. The trial court also stated:

We also have the problem with the balance of the harms involved in this case. I've got a potential contract with Cox, I've got a potential—well I do have a contract with KSBI.

The policy in this State is certainly to enforce the contracts. Now I've got two contracts. The only way I can see this being resolved is with a jury trial, and they're going to have to figure out what happened in this case.

Cox appeals the January 5, 2006, journal entry pursuant to 12 O.S.2001 § 993(A)(2).[5]

¶ 9 In considering the equitable nature of an injunction, the reviewing court must review all evidence on appeal to determine whether the trial court abused its discretion or whether the trial court's decision was clearly against the weight of the evidence. *Sharp v. 251 St. Landfill,* 1996 OK 109, 925 P.2d 546.

¶ 10 In determining whether to issue a temporary injunction, the trial court should consider four criteria: (1) the appli-

cant's likelihood of success on the merits, (2) irreparable harm to the party seeking relief if injunctive relief is denied, (3) the relative effect on the interested parties, and (4) public policy concerns arising out of the issuance of injunctive relief. *Tulsa Order of Police Lodge No. 93 ex rel. Tedrick v. City of Tulsa,* 2001 OK CIV App 153, 39 P.3d 152. The applicant must show entitlement to injunctive relief, under the four criteria, by clear and convincing evidence. *Sharp v. 251 St. Landfill, Inc., supra.*

¶ 11 Although all four criteria, namely likelihood of success, irreparable harm, effect on other parties, and public policy concerns must be met before a temporary injunction is issued, courts tend to focus most heavily upon the "irreparable harm" requirement. *Tulsa Order of Police Lodge N. 93 ex rel. Tedrick, supra.* Injury is irreparable when it is incapable of being fully compensated for in damages or where the measure of damages is so speculative that it would be difficult if not impossible to correctly arrive at the amount of the damages. *Hines v. Independent School Dist. No. 50, Grant County,* 1963 OK 85, 380 P.2d 943.

¶ 12 Here, Cox argues it will suffer irreparable harm if the preliminary injunction is not issued because "... with each passing week, additional Oklahoma high school championship events are conducted." Cox claims it will suffer irreparable injury as a result of loss of local identity, loss of goodwill, and loss of programming (once the games are played they cannot be repeated).[6] It argues it cannot be adequately compensated with monetary damages.

¶ 13 Local identity is the identification of the business with the place of its operation.

---

5. Section 993(A)(2) provides:
A. When an order:

. . .

2. Denies a temporary or permanent injunction, grants a temporary or permanent injunction except where granted at an ex parte hearing, or discharges, vacates, or modifies or refuses to discharge, vacate, or modify a temporary or permanent injunction;

. . .

the party aggrieved thereby may appeal the order to the Supreme Court without awaiting the final determination in said cause. . . .

6. Cox states that while it has already been harmed by its inability to broadcast the 2005 football and 2006 basketball tournaments, the KSBI agreement also includes these events for the 2006–07 and 2007–08 school years. "Additionally, other events are ongoing and any additional delay will result in additional loss of programming (e.g., baseball and softball spring tournaments)."

*Louisville Store of Liberty, Ky., Inc. v. U.S.,* 179 Ct.Cl. 847, 376 F.2d 314 (1967). Regarding its local identity, Mr. Bialis, Cox's vice-president and region manager, testified that "[Programming] is an integral ... part of [Cox's] localism. We built a pretty good brand of—for Cox in this state, and then one of those elements are to provide unique programming that differentiated maybe from other providers. And we do that through our local channels." He testified that Cox's tag line is "Local Like No One Else," and that Cox goes to great efforts to "be unique and local" by providing programming which is "very local driven and sports driven."

¶ 14 On the other hand, although Mr. Bialis testified it televised the Hornets games, little league baseball and college athletics, he also admitted that even if the injunction were denied, such that it could not broadcast the high school playoff games, Cox would still be entitled to telecast the high school games leading up to the championship. He further admitted Cox's local identity for covering high school sports would not vanish, even if the injunction were denied. Additionally, Cox subscribers can still view OSSAA events broadcast by KSBI on Cox's cable network on other channels carried by Cox. Cox subscribers have the ability to watch OSSAA events broadcast by KSBI, but KSBI viewers cannot watch OSSAA events aired by Cox.

■ ¶ 15 Loss of goodwill satisfies the irreparable harm element of injunctive relief where the loss of the right to market and/or sell a unique product is involved. *Dominion Video Satellite, Inc., v. Echostar Satellite Corp.* 356 F.3d 1256 (10th Cir.2004).[7] Cox argues its inability to provide its customers with local high school tournament events impinges on the goodwill it has worked continually to build and maintain in Oklahoma.

¶ 16 However, Cox has not demonstrated it is losing a unique position in the marketplace by losing its exclusive right to telecast OSSAA's championship events. It may still televise regular season events, and Cox subscribers can still view OSSAA games broadcast by KSBI on other channels carried by Cox. Cox did not demonstrate its viewers will note any distinction, or that its ratings have dropped at all.

■ ¶ 17 Cox complains its losses cannot be adequately compensated by monetary damages. However, its "loss of programming" in not being able to broadcast the high school playoff games amounts to the revenue lost by its inability to broadcast these events. This injury can be quantified by loss of advertising and/or loss of viewership. Mr. Brus, president of FBG and general manager of KSBI, testified air coverage has a definite and distinct price which can be calculated. Cox does not dispute this. "If the injury complained of may be compensated by an award of monetary damages then an adequate remedy at law exists and *no irreparable harm may be found as a matter of law.*" *Paradise Distributors, Inc., v. Evansville Brewing Co., Inc.,* 906 F.Supp. 619 (N.D.Okla.1995). Cox did not demonstrate irreparable harm by clear and convincing evidence. Instead, the evidence indicated any harm to Cox could be adequately compensated with money damages. Because Cox did not demonstrate irreparable harm, it becomes unnecessary for this Court to determine whether Cox met the other criteria for issuance of a preliminary injunction.

¶ 18 The trial court's decision denying Cox's motion for a preliminary injunction is not against the clear weight of the evidence. Therefore, the trial court did not abuse its discretion in denying Cox's motion for preliminary injunction.

AFFIRMED.

BELL, P.J., and JOPLIN, J., concur.

---

7. *Dominion Video, supra.,* focused on harm to a unique market position based on a unique product or goodwill and difficulty in calculating damages. In that case, the Tenth Circuit Court of Appeals reversed the trial court's grant of preliminary injunction because of failure to establish the existence of irreparable harm.