2008 OK CIV APP 51

**CITY OF MUSTANG, a municipal corporation, Plaintiff/Appellee,**

v.

**FRATERNAL ORDER OF POLICE, LODGE 163, and Dennis Craig, Defendants/Appellants.**

**No. 103,354.**

Court of Civil Appeals of Oklahoma, Division No. 2.

March 3, 2008.

Certiorari Denied May 5, 2008.

---

Michael D. Segler, Jonathan E. Miller, Wheatley, Segler, Osby & Miller, LLC, Yukon, OK, for Plaintiff/Appellee.

James R. Moore, Sue Wycoff, Moore & Vernier, P.C., Oklahoma City, OK, for Defendants/Appellants.

Diane Pedicord, Sue Ann Nicely, Oklahoma City, OK, for Amicus Curiae, Oklahoma Municipal League, Inc.

JOHN F. FISCHER, Presiding Judge.

¶ 1 Appellants Fraternal Order of Police, Lodge 163(FOP) and Dennis Craig appeal from the Trial Court's order granting a temporary injunction in favor of the City of Mustang (City). The issue on appeal is whether the Trial Court abused its discretion in granting the injunction prohibiting the appellants from pursuing arbitration. We find that the Trial Court did not abuse its discretion in granting the injunction as limited to pursuing the arbitration procedures applicable to major disputes and contract disputes and affirm.

## BACKGROUND

¶ 2 Effective July 1, 2004, the City and the FOP entered into a collective bargaining agreement (Agreement), which established "wages, hours, benefits, grievance procedures, and other conditions of employment" for the City's police department. The issues in this case involve a dispute between the City and Craig, a lieutenant in the Mustang police department, and Craig's attempted pursuit of arbitration to resolve that dispute.

¶ 3 On January 12, 2006, Craig sent the City a document entitled "Major/Contractual Grievance," which challenged Craig's January 2006 annual employee evaluation in which he had received a below standard rating of two in four separate evaluation areas and a below standard rating of one in another area of the evaluation. Craig's grievance sought an amendment of the performance evaluation to reflect a higher rating for each of these five areas and a merit pay increase commensurate with the higher ratings.

¶ 4 The City took the position that neither the results of the evaluation nor the merit pay issue was a proper subject for the grievance process or arbitration pursuant to the parties' collective bargaining agreement. However, the City Manager met with Craig in an effort to resolve the matter. When that proved unsuccessful, the FOP and Craig pursued arbitration by following the statutory arbitration procedure set out in 11 O.S. 2001 §§ 51–101 through 51–113, the procedure specified in the Agreement for the resolution of major disputes and contract disputes.

¶ 5 On April 5, 2006, the City filed a Verified Petition for Declaratory Relief, Temporary Restraining Order, and Preliminary and Permanent Injunction, which named the FOP and Craig as defendants. The City asked the Trial Court to enjoin the FOP and Craig from proceeding with arbitration and to declare that the issue presented by Craig was not a proper subject for grievance or arbitration according to the terms of the collective bargaining agreement.

¶ 6 Article XI of the Agreement contains the Grievance and Arbitration Procedure that determines this controversy. It purports to limit those procedures to "matters of interpretation and application of express provisions and subject of the [Agreement]." Section B defines three categories of grievable issues: (1) "Minor disputes," which are limited to counseling, training, reprimands, re-assignments and written warnings; (2) "Major disputes," which are limited to suspensions, demotion and dismissal; and (3) "All other disputes," described as contractual disputes. An internal three-step process is provided to attempt to resolve each of these categories of disputes. However, if that is unsuccessful, two methods of binding third-party procedures are provided. Minor disputes are resolved by the City's Grievance Board. As previously stated, the statutory method for arbitration provided in 11 O.S. 2001 §§ 51–107 through 51–110 is specified as the method to resolve major disputes and contract disputes.

¶ 7 The City's position in this case is derived from Article IV, section B of the Agreement.

The Employer, except as otherwise specifically provided for in this Agreement, retains and reserves unto itself, without limitation, all of the powers, rights, authority, duties and responsibilities conferred upon it and vested in it by the laws of the

Constitution of the United States and the State of Oklahoma, the Statutes of the State of Oklahoma, and the Charter of the City of Mustang. Further, these rights shall include, but shall not be limited to, the following managerial rights:

. . . .

5. To discipline, demote, and discharge employees for cause, subject to the grievance procedure rights set out in the Agreement.

6. To select employees for promotion to supervisory positions, to determine the qualifications and competency of employees, and to evaluate their performance.

The City also relies on Administrative Policy No. 2.01, which provides, in part:

**5. Relationship to Pay Increase or Promotions**

Pay increases may not be approved on employees receiving a less than standard rating on one (1) or more categories of performance. Those employees who receive less than standard ratings shall be advised that improvement must be made in the category or categories that are less than standard. Those employees receiving ratings below standard shall be re-evaluated.

**6. Relationship to Discipline**

Performance evaluations are in themselves neutral and not disciplinary actions. Their function is to objectively document performance.

¶ 8 After a hearing on the City's request for injunctive relief, the Trial Court enjoined the FOP and Craig from "pursuing or attempting to pursue, directly or indirectly, the arbitration of the grievance contained in the January 12, 2006, 'Major/Contractual Grievance.' "

## STANDARD OF REVIEW

¶ 9 "The standard of review imposed for the issuance of a temporary injunction is whether the Trial Court abused its discretion or entered a decision against the evidence." *Brown v. Oklahoma Secondary Sch. Activities Ass'n*, 2005 OK 88, ¶ 11, 125 P.3d 1219, 1225. A trial court must consider four criteria before issuing a temporary injunction: "(1) the applicant's likelihood of success on the merits, (2) irreparable harm to the party seeking relief if injunctive relief is denied, (3) the relative effect on the interested parties, and (4) public policy concerns arising out of the issuance of injunctive relief." *CoxCom, Inc. v. Oklahoma Secondary Sch. Athletic Ass'n*, 2006 OK CIV APP 107, ¶ 10, 143 P.3d 525, 528.

## ANALYSIS

¶ 10 After consideration of all four criteria, the Trial Court issued a temporary injunction in favor of the City holding:

This Court finds that the City is likely to prevail on its claim that, under Article IV, Section B of the [A]greement, the City retained and reserved to itself certain management rights, including the right to evaluate the performance of employees such as Craig, and that an employee's evaluation is not subject to grievance or arbitration. This Court further finds that the [Agreement] defines "minor disputes," "major disputes" and "contractual disputes" that are subject to grievance and arbitration, and that the disagreement with an employee evaluation does not fall within any of these definitions.

On the basis of this determination, the Trial Court enjoined Craig and the FOP from "pursuing ... arbitration of the grievance ... pending the Court's determination of the issue of whether the matters tendered in the January 12, 2006 grievance are subject to grievance or arbitration."

¶ 11 In issuing the injunction, the Trial Court did not finally determine the merits of the City's position that performance evaluations are not covered by the Agreement. Because of the nature of the proceeding filed by Craig and the FOP, the dispositive issue before the Trial Court was whether the City was likely to succeed in its argument that Craig's grievance was not subject to the statutory method of arbitration.

### I. Judicial Review of Arbitration Agreements

¶ 12 The fundamental legal issue in this case is whether the City and the FOP

agreed to arbitrate the evaluation and merit pay disputes. *Rogers v. Dell Computer Corporation,* 2005 OK 51, 138 P.3d 826, governs this Court's review of the Trial Court's ruling on that issue. "The court's role is to determine whether there is a valid, enforceable agreement to arbitrate the dispute." *Id.* at ¶ 14, 138 P.3d at 830. *See also Wilkinson v. Dean Witter Reynolds, Inc.,* 1997 OK 20, ¶ 9, 933 P.2d 878, 880 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985)); *Gannon v. Circuit City Stores, Inc.,* 262 F.3d 677, 680 (8th Cir.2001). The existence of an arbitration agreement is governed by principles of state law. *Rogers,* 2005 OK 51 at ¶ 14, 138 P.3d at 830. A trial court's decision regarding arbitration is reviewed de novo, the same standard of review employed by the trial court. *Thompson v. Bar–S Foods Co.,* 2007 OK 75, ¶ 9, 174 P.3d 567, 572. Therefore, while we review the Trial Court's decision to issue the injunction for an abuse of discretion, determining the City's likelihood of success on the arbitration issue presents a question of law, which we review de novo.

¶ 13 Absent an arbitration agreement, a municipal employer may:

1. Direct the work of, hire, promote, assign, transfer, demote, suspend, discharge or terminate municipal employees;

2. Determine qualifications for employment and the nature and content of personnel examinations; and

3. Take actions as may be necessary to carry out the mission of the municipal employer in emergencies.

11 O.S. Supp.2004 § 51–205. Here, the City and the FOP have agreed to a grievance and arbitration procedure that limits the City's ability to act unilaterally with respect to these matters.

¶ 14 Arbitration is a matter of contract. The question of arbitrability, whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance, is an issue for judicial determination unless clearly provided otherwise. *See AT & T Techs., Inc. v. Communications Workers of Am., et al.,* 475 U.S. 643, 648–649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). *See also Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) (requiring arbitration of a claim that the contract was void for illegality because it contained a usurious interest rate where the parties agreed to arbitrate any claim or dispute arising from or related to the validity or enforceability of the contract).

¶ 15 Generally, when municipal employers and their employees agree to arbitrate questions concerning the interpretation of a collective bargaining agreement, the court's function is limited to determining whether the party requesting arbitration has presented "a claim which on its face is covered by the agreement." *City of Muskogee v. Martin,* 1990 OK 70, ¶ 7, 796 P.2d 337, 340. Although the parties may agree that an arbitrator will decide issues of arbitrability this collective bargaining agreement contains no such clear and express provision. Absent an express agreement that questions of arbitrability will be determined by an arbitrator, "it is within the authority of the courts to determine if a dispute is arbitrable under a collective bargaining agreement," and "[a]rbitration should be allowed unless the court can say with 'positive assurance' the dispute is not covered by the arbitration clause. 'Doubts should be resolved in favor of coverage.' " *Id.* at ¶ 8, 796 P.2d at 340 (footnotes omitted).

## II. The City/FOP Arbitration Agreement

¶ 16 Ordinarily, the scope of an arbitration agreement is a contractual matter between the parties to the agreement. However, municipal employers and their employees, unlike private parties, are constrained by various Oklahoma statutes when negotiating a collective bargaining agreement. *See* 11 O.S. Supp.2004 § 51–200 through 51–220. When the municipal employees are members of a police or fire department, the parties' ability to negotiate certain matters is further restricted. *Cf.,* 11 O.S.2001 §§ 51–101 through 51–110.

¶ 17 Title 11 O.S.2001 § 51–102(5), defines collective bargaining as:

[T]he performance of the mutual obligation of the municipal employer or his designated representatives and the representative of the employees to meet at reasonable times, including meetings appropriately related to the budget-making process; to confer in good faith with respect to wages, hours and other conditions of employment, or the negotiation of an agreement, or any question arising thereunder; and to execute a written contract incorporating any agreement reached if requested by either party. Such obligation shall not, however, compel either party to agree to a proposal or require the making of a concession.

Because members of a police or fire department are prohibited from engaging in strikes, see 11 O.S.2001 § 51–101, they are granted the right to "bargain collectively with their municipality ... with respect to wages, salaries, hours, rates of pay, grievances, working conditions and all other terms and conditions of employment." 11 O.S.2001 § 51–103. *See also City of Bethany v. Pub. Employees Relations Bd. of State of Oklahoma.*, 1995 OK 99, ¶ 11, 904 P.2d 604, 609 ("The Legislature explicitly balanced the requirement that CBAs contain a no-strike provision with the right to grievance arbitration.").

¶ 18 Section 51–111 of the Oklahoma Municipal Code provides that the collective bargaining agreement shall contain certain provisions including:

a clause establishing arbitration procedures for the immediate and speedy resolution and determination of any dispute which may arise involving the interpretation or application of any of the provisions of such agreement or the actions of any of the parties thereunder.

To determine the meaning of this statute, it is instructive to compare the similar statutory provision applicable to municipal employees who are not prohibited from engaging in a work stoppage, slowdown or strike.

The collective bargaining agreement negotiated between the employer and the exclusive bargaining representative shall contain a grievance resolution procedure which shall apply to all employees in the bargaining unit and shall provide for final and binding arbitration of grievances pertaining to employment terms and conditions and related personnel matters including questions of arbitrability and appeal of disciplinary and other employment actions.

11 O.S. Supp.2004 § 51–207. The most obvious difference is the opportunity for these employees to negotiate the arbitrability of various terms and conditions of their employment, that is whether they will be decided by an arbitrator or a court. *See Kaplan,* 514 U.S. 938 at 943, 115 S.Ct. at 1923 ("arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute").

¶ 19 Members of a police or fire department have no such choice. And, it would be antithetical to "the careful balance the Legislature has struck in the statute—grievance arbitration in exchange for no-grievance-strikes pledge from our most important public safety workers" to give them the right to arbitrate some terms and conditions of employment and to strike regarding others. *City of Bethany,* 1995 OK 99 at ¶ 17, 904 P.2d at 610–611.

■ ¶ 20 Consequently, we do not read section 51–111 to permit the City to "reserve unto itself" and thereby exclude from the grievance/arbitration requirement any management functions that relate to "wages, salaries, hours, rates of pay, grievances, working conditions and all other terms and conditions of employment." 11 O.S.2001 § 51–103. Managerial prerogatives may be excluded from the Agreement only if derived from constitutional or statutory authority. *City of Bethany,* 1995 OK 99 at ¶ 22, 904 P.2d at 612 n. 22.[1] The City has not cited such authority. Performance evaluations and merit pay issues are related to "wages, ... rates of pay ... [or] all other terms and conditions of employment" and the City has

---

1. *But See, City of Durant v. Cicio,* 2002 OK 52, 50 P.3d 218, and the cases discussed therein regarding the extent to which this may be permitted.

not argued otherwise. Nonetheless, it claims to have excluded those subjects from the Agreement through the bargaining and negotiation process. The City cites no authority and we have found none that would permit the City to pick and choose among the subjects included within the purview of section 51–103 when negotiating a collective bargaining agreement with its police and fire departments. Although we deal here with an individual police officer's case, certainly the City would not expect, for example, to exclude from the grievance and arbitration procedures its decision to indirectly implement a wage freeze by rating every member of the police department below standard. The City's reliance on cases that do not involve workers whose right to strike has been statutorily eliminated have little relevance to the issues in this case.

¶ 21 As Craig and the FOP correctly point out, the City's Administrative Policy 2.01 of February 8, 1999, providing for performance evaluations and merit pay increases, became a part of the Agreement pursuant to Article XX and by operation of law.

> All rules, regulations, fiscal procedures, working conditions, departmental practices and manner of conducting the operation and administration of fire departments and police departments currently in effect on the effective date of any negotiated agreement shall be deemed a part of said agreement unless and except as modified or changed by the specific terms of such agreement.

11 O.S.2001 § 51–111. Although the City could have negotiated modifications or changes to Policy 2.10, section 51–111 did not authorize the City to exclude that policy from the Agreement. Consequently, we find that the City's performance evaluations and merit pay decisions are subject to the Grievance and Arbitration Procedure of the Agreement.

¶ 22 Even though the Fire and Police Arbitration Act does not permit the City to "negotiate out" any of the covered subjects from the collective bargaining agreement, it does not preclude negotiations regarding the type of grievance and arbitration procedures a city and its police and fire employees will utilize. *City of Bethany*, 1995 OK 99 at ¶ 5,

904 P.2d at 608 ("Although 11 O.S. Supp.1985 § 51–111 permits different grievance administration *procedures*, it requires that *all* disputes over *any* terms contained in the collective bargaining agreement be subject to final and binding grievance arbitration."). The parties to this Agreement negotiated two different arbitration methods to resolve their differences depending on the type of dispute involved. The FOP and Craig only pursued the statutory method of arbitration provided in 11 O.S.2001 §§ 51–107 through 51–110. This is the method provided in the Agreement for major disputes and contract disputes. Therefore, the resolution of this appeal depends on whether Craig's dispute is a minor dispute or a major/contract dispute. As previously noted, the parties could have but did not agree that issue would be resolved by an arbitrator. Therefore, which arbitration method applies to a particular dispute is for this Court to resolve. *City of Muskogee*, 1990 OK 70 at ¶ 8, 796 P.2d at 340.

### III. Craig's Grievance

¶ 23 The essence of Craig's grievance is that he received less than satisfactory performance evaluations and, as a result, did not qualify for a merit pay increase. Although Craig characterized his dispute as a "major/contract" dispute, he was not suspended, demoted or dismissed nor has he shown how his grievance constitutes a contract dispute. Consequently, the Trial Court was correct in concluding that Craig's grievance was not a major dispute or a contract dispute as those terms are defined in the Agreement.

¶ 24 Nonetheless, minor disputes, as defined in the Agreement, include employee "counseling." The City maintains that its performance evaluations are not disciplinary but neutral, which suggests that they have a counseling function. According to Policy 2.01, the stated purpose of those evaluations is to open communications, improve performance and plan for the employee's personal growth. The City did not agree to "arbitrate" decisions regarding those matters pursuant to the statutory procedures set out in 11 O.S.2001 §§ 51–107 through 51–110. It did, however, agree to submit unresolved

minor disputes to the City's Grievance Board for a decision binding on both parties. Even though it is different from the statutory arbitration procedure provided for the resolution of major disputes and contract disputes, the Grievance Board procedure satisfies the requirements of section 51–111.

¶ 25 Therefore, while the City is likely to succeed in its argument that Craig did not have a right to pursue statutory arbitration, it is not likely to prevail on its argument that Craig is not entitled to pursue any arbitration, i.e. the Grievance Board procedure. The only arbitration procedure pending at the time of the Trial Court's injunction was Craig's statutory proceeding. The Trial Court's order enjoining Craig and the FOP from pursuing that arbitration method is correct. The Trial Court has specifically reserved for later determination the extent to which the matters tendered in Craig's January 12, 2006, grievance are subject to the Grievance and Arbitration Procedure and, therefore, has not construed its injunction to prohibit Craig from pursuing any available non-statutory form of arbitration including the Grievance Board procedure.

¶ 26 Because the Trial Court only enjoined Craig and the FOP from pursuing the pending arbitration proceeding, the Trial Court's determination that the City would be irreparably harmed if compelled to participate in the pending arbitration is correct. It follows that enforcement of this aspect of the parties' Agreement would not unjustly disadvantage Craig or adversely affect the public interest.

## CONCLUSION

¶ 27 The Trial Court correctly concluded that it had jurisdiction to determine whether the Agreement contains an arbitration provision applicable to Craig's grievance. After a thorough review of the record and the applicable law, we conclude that the City is not likely to prevail on its argument that it excluded performance evaluations and merit pay decisions from the collective bargaining agreement but is likely to prevail on its argument that the kind of grievance pursued by Craig is not subject to the statutory arbitration provisions specified in the Agreement for the resolution of major disputes or con-

tract disputes. Therefore, the Trial Court did not abuse its discretion in enjoining Craig and the FOP from pursuing the arbitration proceeding at issue in this case.

¶ 28 AFFIRMED.

RAPP, C.J., and GABBARD, J. (sitting by designation), concur.