2010 OK CIV APP 91

Tom CHENOWETH, Plaintiff/Appellant,

v.

CITY OF MIAMI, Defendant/Appellee.

No. 107,567.

Court of Civil Appeals of Oklahoma, Division No. 3.

Aug. 26, 2010.

Jot Hartley, Terry D. Allen, The Hartley Law Firm, P.L.L.C., Jay, OK, for Appellant.

Matthew B. Free, Bob D. James, Thomas A. LeBlanc, Best & Sharp, Tulsa, OK, for Appellee.

LARRY JOPLIN, Presiding Judge.

¶ 1 Plaintiff/Appellant Tom Chenoweth (Plaintiff) seeks review of the trial court's order denying his motion to reconsider after the trial court granted the motion for summary judgment of Defendant/Appellee City of Miami (City) on Plaintiff's claim to damages for alleged negligent infliction of emotional distress and retaliation. In this accelerated review proceeding, Plaintiff challenges the trial court's order as affected by errors of both law and fact.

¶ 2 Plaintiff worked for City as a fireman. Employment evaluations in 2001, 2003 and 2004 rated Plaintiff "2," "needs improvement" in the area of "Dependability (Doesn't miss work regularly)" on account of his high rate of absences from work on sick leave. In 2004, the Fire Chief issued, then rescinded, a written warning to Plaintiff concerning alleged "excessive" use of sick leave.

¶ 3 In 2005, Plaintiff again received a "2," "needs improvement" in the area of "Dependability (Doesn't miss work regularly)" on account of a continued pattern of absenteeism on sick leave. The Fire Chief issued a written warning to Plaintiff concerning excessive use of sick leave.

¶ 4 Plaintiff then initiated a grievance under the collective bargaining procedures of City's contract with firefighters, seeking removal of the written warning from his employment record. Before the City Manager, City introduced evidence demonstrating Plaintiff's use of all sick leave earned during the years 2001 through 2005. Plaintiff introduced evidence showing earned, accrued, but unused sick leave from the years 1997 through 2000 sufficient to cover his absences from work in later years. The City Manager found for Plaintiff, reasoning the collective bargaining agreement did not define "excessive" use of leave.

¶ 5 In 2006, Plaintiff received an "I" (unsatisfactory) on his employment evaluation of "Dependability." The evaluation specifically noted Plaintiff's "[s]ickness has caused him to miss many shifts or to go home ill from work," "[i]mprovement is needed in his attitude toward details at work and the use of sick time," and his use of *more* sick leave *than he earned* in the current year. After a meeting with Plaintiff in January 2007, the Fire Chief advised Plaintiff, in writing, he would be "re-evaluated" at his next anniversary date, and he had eleven months to improve his attitude and dependability.

¶ 6 On September 27, 2007, Plaintiff filed his Notice of Claim with City pursuant to the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151, et seq. Plaintiff alleged that, even though he had violated no specific term of the collective bargaining agreement, he had nevertheless received a low "dependability" score which "hampered his ability to receive any promotion or raise," and for which he sought $150,000.00 in economic damages, physical hurt, trauma, pain and suffering of the mind and body, as well as emotional and mental trauma. The claim was denied.

¶ 7 In January 2008, Plaintiff commenced the instant action. Plaintiff first alleged City's employees, "in reckless disregard of causing severe emotional distress and injury to Plaintiff," "wrongfully repeat[ed] and publish[ed] false and scandalous personal information relating to the enjoyment of certain rights that Plaintiff was entitled to under the Collective Bargaining Agreement," thereby "creating and permitting to exist an offensive, unbearable and hostile environment toward Plaintiff and by reprimands and poor evaluations for Plaintiff's proper use of sick leave." Plaintiff secondly alleged that City "did retaliate against the Plaintiff . . . for his use of sick leave by reprimanding him . . . , failing to promote him or provide a pay raise, giving poor evaluations, and continually transferring him to different shifts." On account of City's "infliction of emotional distress" and "retaliation," Plaintiff consequently sought an award of actual and punitive damages.

¶ 8 City filed a motion for summary judgment. City first argued that, to the extent Plaintiff's emotional distress claim centered on allegations of "bad faith" acts by City's

employees, outside the scope of their employment, the OGTCA specifically shielded City from liability. 51 O.S. Supp.2007 § 152(11).[1] Plaintiff secondly argued Oklahoma law did not recognize a claim for "retaliation."

¶ 9 Over Plaintiff's objection, the trial court agreed with City. Plaintiff filed a motion to reconsider and motion to vacate, which the trial court denied. Plaintiff appeals, and the matter stands submitted on the trial court record.[2]

¶ 10 "Summary relief issues stand before us for *de novo* review[,] [and] [a]ll facts and inferences must be viewed in the light most favorable to the non-movant." *Reeds v. Walker,* 2006 OK 43, ¶ 9, 157 P.3d 100, 106–107. (Footnotes omitted.) "Summary judgment will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Lowery v. Echostar Satellite Corp.,* 2007 OK 38, ¶ 11, 160 P.3d 959, 963–964. (Citations omitted.) "Summary judgment will be reversed if the appellate court determines that reasonable men might reach different conclusions from the undisputed material facts." *Id.*

¶ 11 However, "[a] trial court's denial of a motion for new trial is reviewed for abuse of discretion." *Reeds v. Walker,* 2006 OK 43, ¶ 9, 157 P.3d 100, 106–107. (Footnotes omitted.) Likewise, "[t]he correct standard of review employed upon a motion to vacate is whether sound discretion was exercised to vacate [or deny vacation of] the earlier decision." *Kordis v. Kordis,* 2001 OK 99, ¶ 6, 37 P.3d 866, 869. So, "[w]here, as here, our assessment of the trial court's exercise of discretion in denying defendants a new trial rests on the propriety of the underlying grant of summary judgment, the abuse-of-discretion question is settled by our *de novo* review of the summary adjudication's correctness." *Reeds,* 2006 OK 43, ¶ 9, 157 P.3d at 106–107. (Emphasis original.) (Footnotes omitted.)

¶ 12 "To establish a prima facie case of intentional infliction of emotional distress, a plaintiff must demonstrate: (1) that the tortfeasor acted intentionally or recklessly; (2) that the tortfeasor's conduct was extreme and outrageous; (3) that plaintiff actually experienced emotional distress; and (4) that the emotional distress was severe." *Ishmael v. Andrew,* 2006 OK CIV APP 82, ¶ 19, 137 P.3d 1271, 1277; *Breeden v. League Services Corp.,* 1978 OK 27, ¶ 7, 575 P.2d 1374, 1376. Whether an actor's conduct is so extreme and outrageous as to permit recovery constitutes a question of law. *Breeden,* 1978 OK 27, ¶ 12, 575 P.2d at 1377–1378.

¶ 13 However, "unlike a cause of action for intentional infliction of emotional distress, negligent infliction of emotional distress is not an independent tort." *Kraszewski v. Baptist Medical Center of Oklahoma, Inc.,* 1996 OK 141, ¶ 1, 916 P.2d 241, 243, fn. 1. (Citation omitted.) That is to say, "[u]nder Oklahoma's jurisprudence the negligent causing of emotional distress is not an independent tort, but is in effect the tort of negligence." *Lockhart v. Loosen,* 1997 OK 103, ¶ 16, 943 P.2d 1074, 1081.

¶ 14 Consequently, "before damages for mental suffering may be collected, the plaintiff must establish: a duty on the part of the defendant to protect the plaintiff from injury; a failure of the defendant to perform the duty; and an injury to the plaintiff resulting from the failure." *Kraszewski,* 1996 OK 141, ¶ 1, 916 P.2d at 243, fn. 1. (Citation omitted.) The liability of the State or its subdivisions is entirely dependent on such a showing because:

The GTCA defines a "tort" as a legal wrong involving a violation of a duty imposed by general law or otherwise resulting in a loss as the proximate result of an act or omission of a political subdivision or employee acting within the scope of employment. "Scope of employment" is defined as performance by an employee act-

---

1. " 'Scope of employment' means performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority...."

2. *See,* Rule 13(h), Rules for District Courts, 12 O.S.2001, Ch. 2, App.; Ok.S.Ct.R. 1.36, 12 O.S. 2001, Ch. 15, App.

ing in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority. Except in cases where only one reasonable conclusion can be drawn, the question of whether an employee has acted within the scope of employment at any given time is a question for the trier of fact. An employee of a political subdivision is relieved from private liability for tortious conduct committed within the scope of employment. A political subdivision is relieved from liability for tortious conduct committed by employees outside the scope of employment. *Tuffy's, Inc. v. City of Oklahoma City,* 2009 OK 4, ¶ 8, 212 P.3d 1158, 1163. Whether one owes a duty to another also presents a question of law. *See, e.g., Miller v. David Grace, Inc.,* 2009 OK 49, ¶ 11, 212 P.3d 1223, 1227. (Citations omitted.) So guided, we hold Plaintiff's claim for emotional distress must fail.

■■■ ¶ 15 First, it cannot be seriously disputed that the evaluations of Plaintiff's job performance were administered by City employees acting within the scope of their employment duties, and a claim for intentional infliction of emotional distress requires proof of some intentional or reckless, extreme and outrageous conduct, equivalent, in our minds, to bad faith. If, in rating Plaintiff's "dependability" and absenteeism, the City employees were acting in good faith, the City is insulated from liability by the OGTCA, § 152(9) and (11). *See, Tuffy's, Inc.,* 2009 OK 4, ¶ 12–14, 212 P.3d at 1164–1165. *See also, Fehring v. State Ins. Fund,* 2001 OK 11, ¶ 23, 19 P.3d 276, 283 [3]; *McMullen v. City of Del City,* 920 P.2d 528, 530 (Okla.App.1996).[4] On the other hand, if, in rating Plaintiff's "dependability" and absenteeism, the City employees were

acting in bad faith, they were acting outside the scope of their employment, and City bears no liability for the employees' acts.

■■■ ¶ 16 Second, we cannot say, as a matter of law, the statements chastising Plaintiff for his use of sick leave and absenteeism were so extreme and outrageous as to permit recovery in this case. City surely has an important interest in maintaining an adequately staffed fire department, and chronic absenteeism, even if for a valid reason, surely impacts City's ability to insure the fire department has, on every shift, an adequate number of firefighters to handle any contingency.

■■■ ¶ 17 Third, Plaintiff has identified, and we discern, no duty breached by City as to support a claim for negligently inflicted emotional distress. City is granted broad discretion to "[d]irect the work of, hire, promote, assign, transfer, demote, suspend, discharge or terminate municipal employees; [d]etermine qualifications for employment and the nature and content of personnel examinations; and [t]ake actions as may be necessary to carry out the mission of the municipal employer in emergencies," "[u]nless limited by the provisions of a collective bargaining agreement or by other statutory provisions." 11 O.S. Supp.2004 § 51–205. Consequently, the collective bargaining agreement defines the terms and conditions of Plaintiff's employment, and the rights and duties of the parties, including the rights of City to evaluate the performance of its employees. *See, e.g., City of Mustang v. Fraternal Order of Police, Lodge 163,* 2008 OK CIV APP 51, 184 P.3d 1098. But, the parties' collective bargaining agreement does not appear in the record before us.

**3.** "[W]hen, for viability, the tort cause of action sued upon requires proof of an element that necessarily excludes good faith conduct on the part of governmental employees, there can be no liability against the governmental entity in a GTCA-based suit."

**4.** "In *Parker v. City of Midwest City,* 850 P.2d 1065 (Okla.1993), the court described a conundrum facing anyone who sues a municipality in Oklahoma for malicious prosecution, which *must* put an end to any such claim pressed against a governmental entity covered by the Governmental Tort Claims Act. To sue any statutory govern-

mental entity in tort, the plaintiff must prove he was harmed by an employee acting within the scope of his employment. To prove a claim for malicious prosecution, one would have to show that the tortfeasor acted maliciously and without probable cause. But, as the court noted, a governmental employee only acts within the scope of his employment when he acts in good faith. Therefore, a plaintiff could not possibly hold a governmental entity liable for malicious prosecution, because the only way to prevail on such a claim would be to present evidence which necessarily took the bad actors outside the scope of their employment." (Emphasis original.)

¶ 18 Lastly, Plaintiff cites, and we find, no authority supporting a damages claim for "retaliation." Whether Plaintiff is entitled to a promotion or pay raise necessarily depends on the governing provisions of the collective bargaining agreement, and, we assume, consideration of his job performance. As we have observed, City possesses an interest in its firefighters' ability to appear and fulfill the duties of their assigned shifts, and impairment of that interest by chronically absent employees.

¶ 19 We therefore hold the trial court did not err in denying the motion for new trial/reconsideration of Plaintiff. The order of the trial court is AFFIRMED.

BELL, V.C.J., and MITCHELL, J., concur.