**CITY OF TULSA, Oklahoma, a Municipal Corporation, Appellant,**

v.

**Ronnie D. TAYLOR, Appellee.**

**No. 47940.**

Court of Appeals of Oklahoma,
Division No. 1.

July 20, 1976.

Rehearing Denied Sept. 7, 1976.

Certiorari Denied Oct. 12, 1976.

Released for Publication by Order of Court
of Appeals Oct. 14, 1976.

Waldo F. Bales, City Atty., by Ronald D. Wood, Asst. City Atty., Tulsa, for appellant.

Frasier & Frasier by James E. Frasier, Tulsa, for appellee.

BOX, Judge:

An appeal by the City of Tulsa, a municipal corporation, (defendant), from a Declaratory Judgment declaring a certain section of the Personnel Policies and Procedures Manual contrary to the law of the State of Oklahoma.

Appellee Ronnie D. Taylor, a Tulsa police officer, and a member of the National Guard of the State of Oklahoma, filed his petition for himself and on behalf of 36 other persons similarly situated, challenging the validity of a certain section of the Personnel Policies and Procedures Manual, pertaining to the pay policy of employees of the City of Tulsa, while on military reserve duty.

From the granting of a Declaratory Judgment in favor of appellee, City appeals, alleging error as follows:

"PROPOSITION I. The Court erred in overruling Appellant's Special Demurrer to Appellee's petition, which demurrer was based on the grounds that the Appellant is a Charter City and that, as a consequence, the laws of the State of Oklahoma do not apply to matters of purely local concern, and that the City's personnel policies and procedures is a matter of purely local concern.

"PROPOSITION II. The Court erred in its interpretation of the phrase 'loss of pay' contained in 44 O.S.1973, Sec. 209, and in 72 O.S.1973, Sec. 48.

"PROPOSITION III. The Court erred in that 44 O.S.1973, Section 209 and 72 O.S.1973, Section 48, only apply to government employees who are ordered to active duty, and that the term 'active duty' does not embrace summer training camps of relatively brief duration.

"PROPOSITION IV. The Court erred in giving effect to 44 O.S.1973, Section 209 and to 72 O.S.1973, Section 48, in that the Firefighters' and Policemen's Arbitration Law, 11 O.S.1971, Section 548.1 et seq., effective March 11, 1971, which gives to firefighters, policemen, and municipal employees the right to bargain collectively with respect to wages, salaries, hours, rates of pay, grievances, working conditions and all other terms and conditions of employment, was enacted at a later time than 44 O.S.1973, Section 209 and 72 O.S. 1973, Section 48, which were interpreted by the Court, and therefore, supersedes said legislation."

■ The basic questions for this court are whether or not police officers of the City of Tulsa, who are also members of the National Guard, shall be paid their full city salary while attending their annual two week summer training camps, also collecting pay from their National Guard organizations? Does public policy require the State of Oklahoma or subdivisions thereof, or a municipality therein to provide these individuals their full pay in addition to their summer encampment pay? We answer both questions in the affirmative.

The Constitution of the State of Oklahoma, Art. 5 § 40, provides as follows:

"*Militia*. The Legislature shall provide for organizing, disciplining, arming, maintaining, and equipping the Militia of the State."

44 O.S.1971, titled "Militia" provides in part as follows:

"§ 2. *Purpose.*—The purpose of this Act is to revise, amend, correct and bring up to date the statutes relating to the Military Department of Oklahoma, the organized and unorganized militia, and the National Guard of Oklahoma, and as set forth in the title hereof.

"§ 71. *Drills*, target practice, encampments and maneuvers—Duty to attend—Refusal of employer to permit attendance—Drills, exercises, etc.—Each detachment and unit in the National Guard

shall assemble for drill and instruction, including indoor target practice, not less than forty-eight (48) times each year, and shall, in addition thereto, participate in encampments, maneuvers, or other exercises, including outdoor target practice, at least fifteen (15) days in training each year, including target practice, unless such unit or detachment shall have been excused from any participation in any part thereof by the Governor. It shall be the duty of each commissioned officer and enlisted man or airman of the Oklahoma National Guard to be present and perform all the duties required of him at each assembly for drill and instruction, encampment, maneuvers or other exercises, unless regularly excused by competent authority. Any employer who refuses to permit an employee who may be a member of the National Guard of this state to attend any drill, ceremony, exercise, or any duty which he may be legally called upon to perform shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than Fifty Dollars ($50.00) nor more than Two Hundred Dollars ($200.00), or by imprisonment for not less than ten (10) days, nor more than sixty (60) days in the county jail, or by both such fine and imprisonment.

"§ 209. *Leave of absence* to public officers and employees. All officers and employees of the State, or a subdivision thereof, or a municipality therein, who are members of the National Guard, shall, when ordered by proper authority to active service, be entitled to a leave of absence from such civil employment for the period of such active service, without loss of status or efficiency rating, and without loss of pay during the first thirty (30) days of such leave of absence."

Section 209 was amended in 1973 as follows:

" . . . *during the first twenty (20) calendar days of such leave of absence*

*during any calendar year.*" (Emphasis added.)

For leave of absences for members of reserve components, see 72 O.S.Supp.1973, § 48.

The Constitution of the State of Oklahoma, Art. 18, § 3, provides in part as follows:

"Any city containing a population of more than two thousand inhabitants may frame a charter for its own government, *consistent with and subject to the Constitution and laws of this State, . . . .*" (Emphasis added.)

Prior to June, 1973, Section 413.02 of the Policies and Procedures Manual of the City of Tulsa read as follows:

"A regular employee who is required to make annual training tours of duty in connection with his military reserve activities shall receive his normal rate of pay while on such tours of duty for a period not to exceed thirty (30) calendar days . . . ."

On June 6, 1973, Section 413.02, supra, was amended as follows:

"A regular or part-time employee who makes annual tours of duty in connection with military reserve activities shall be paid by the City only the amount that would be the difference between the normal pay of the employee and the military pay received for the period in which the employee is on authorized military leave and travel time. The employee shall receive no compensation from the City if the military pay exceeds the normal pay which would have been received for that period . . . ."

Although speaking to a different subject matter, the Supreme Court answered appellant's contentions in the case of *Sublett v. City of Tulsa*, 405 P.2d 185, recognizing that "there can be but one sovereign power in the government of a state" where at p. 201 the Court stated as follows:

" . . . The right of the people of the City of Tulsa to declare whether they

shall attempt development of industrial endeavors by issuing bonds therefor arises by authority of the Constitutional amendment. This right cannot be circumscribed or divested by limitations in the city charter. We feel this question was settled in *City of Sapulpa v. Land,* 101 Okl. 22, 223 P. 640, p. 645, 35 A.L.R. 872:

" 'The contention that cities operating under a freeholders' charter form of government have the power to determine what are purely municipal affairs, and, once having determined through the municipal legislative body legislating within the authority granted by the municipal charter, such matter is binding upon the state, is untenable. The fallacy of this contention is obvious. It is a well-settled principle of law that there can be but one sovereign power in the government of a state. As said by Mr. Justice Timlin in *State ex rel. Mueller v. Thompson,* 149 Wis. 488, 137 N.W. 20, 43 L.R.A.(N.S.) 339, Ann.Cas.1913C, 744, "As well might we speak of two centers in a circle as two sovereign powers in a state." This is fundamentally contrary to our form of institutions. Under our national and state organizations a municipal city government is only possible as an administrative agency of the state having that measure of local self-government granted by the supreme sovereign power, and all local laws of such municipality must be consistent with our fundamental principle of government, and always subject to the control of the state. *State ex rel. Mueller v. Thompson,* supra.

" 'Under our form of government there can be no absolute self-governing American cities, no matter how limited as to subject. To hold otherwise would be to attempt to establish the impossible, a sovereign within a sovereign . . . .' "

By reason of our holding herein, we find no reason to comment on appellant's Proposition IV.

■ Whether a person is to be influenced and encouraged to serve in the military cannot be classified as a purely local or municipal issue, as contended by City of Tulsa.

■ We hold that the leave policy as set out by state statutes, supra, is a statewide benefit granted by the Legislature to all persons who recognize a duty to serve their State and Country in the Armed Services; thus cannot be taken away by a city. The judgment of the trial court is affirmed.

AFFIRMED.

ROMANG, J., concurs.