Dear Representative Ritze:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301 — 4335, may a municipality require written notice from an employee, either by an ordinance, a personnel manual or other means, that the employee has been called to military service in order for the employee to be able to return to covered employment?
 2. Title 44 O.S.Supp. 2009, § 209[44-209] requires a political subdivision to grant a leave of absence and for a certain period of time to pay the compensation to an officer or employee who is called to military service. Is an incorporated city a "political subdivision" as that term is used in Section 209?
 3. Is an incorporated city organized under a home rule charter pursuant to 11 O.S. 2001 Supp. 2009, §§ 13-101 — 13-115, required to comply with the terms of 44 O.S.Supp. 2009, § 209[44-209], which require payment of compensation of an officer or employee on military leave?
 4. Under 44 O.S.Supp. 2009, § 209[44-209], is a city required to pay a salaried officer or employee who is called to military service an amount equal to the officer or employee's compensation converted to a daily rate multiplied by thirty?
 5. Is a city required by the terms of 44 O.S.Supp. 2009, § 209[44-209], to pay an hourly officer or employee who is called to military service an amount equal to compensation which would have been paid to the employee for a period of thirty calendar days? *Page 2 
 6. May a city base its payment to both salaried and hourly officers or employees on military leave on the number of days the officer or employee would have actually worked during the thirty-day period, thereby reducing the number of days for which payment is due to some number less than thirty?
 I. INTRODUCTION
In 1994, Congress passed the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), [1] to protect the employment rights of civilians who serve in the uniformed services. Congress stated the three purposes of USERRA were:
 (1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;
 (2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and
 (3) to prohibit discrimination against persons because of their service in the uniformed services.
38 U.S.C. § 4301(a) (West, Westlaw through Nov. 11, 2009).
USERRA grants individuals who serve their country in the uniformed forces certain rights upon their return to civilian employment. For example,
 (a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation. *Page 3 
Id. § 4311(a). If a person meets certain qualifications and complies with certain requirements on return to civilian employment the individual is entitled to reemployment rights and benefits. Id. § 4312(a). The term "employer" is defined such that every employer in the United States is subject to USERRA. Id. § 4303(4)(A).
Although there are no provisions in USERRA that govern payment of an employee's compensation while an employee is on military leave, Oklahoma has adopted its own laws authorizing a leave of absence and requiring payment of an officer's or employee's compensation when an officer or employee of a state or a political subdivision who is a member of the Oklahoma National Guard or any reserve component of any branch of the United States military is called to military service. Title 44 O.S.Supp. 2009, § 209[44-209], which you inquire about, in pertinent part states:
 All officers and employees of the state or a political subdivision thereof who are members of the Oklahoma National Guard or any reserve component of any branch of the United States military, shall, when ordered by proper authority to active or inactive service, be entitled to a leave of absence from civil employment for the period of active service, without loss of status or efficiency rating. During the first thirty (30) calendar days for employees of political subdivisions or the first thirty (30) regular scheduled work days for state employees of the leave of absence in any federal fiscal year, the officers or employees shall receive their full regular pay from the employing state agency or political subdivision. During the remainder of the leave of absence in any federal fiscal year, the employing state agency or political subdivision may elect to pay them an amount equal to the difference between the officers' or employees' full regular pay from the employing state agency or political subdivision and their Oklahoma National Guard or United States military reserve component pay, except that state officers and employees shall receive the difference between their full regular pay and their Oklahoma National Guard or United States military reserve component pay when they are ordered by proper authority to active or inactive service retroactive to the date that the state officer or employee reported to active service on or after September 11, 2001, during the period that Operation Enduring Freedom is in effect.[2] *Page 4 
Id. (emphasis added) (footnote added). This state statute contains specific directives for the payment of compensation by the state and political subdivisions when an officer or employee is ordered by proper authority to military service. You ask several questions relating to these federal and state statutes. *Page 5 
 II. A MUNICIPALITY MAY NOT REQUIRE WRITTEN NOTICE OF ANOFFICER'S OR EMPLOYEE'S CALL TO MILITARY SERVICE IN ORDER TO RETURN TO EMPLOYMENT AS SUCH A REQUIREMENT ESTABLISHES ANADDITIONAL PREREQUISITE TO REEMPLOYMENT BEYOND THAT PROVIDED BYUSERRA.
Your first three questions relate to whether USERRA permits a municipality to require its officers and employees to provide written notice when called to military service in order to return to employment.
You specifically ask whether a municipality has the right to require a written notice from an officer or employee regarding a call to active duty in order for the employee to be able to return to covered employment pursuant to the USERRA provisions. You also ask whether a municipality may lawfully adopt an ordinance requiring some form of written notice to be provided by an officer or employee in order to invoke rights granted to the employee under USERRA. Finally, you ask whether a municipality may lawfully implement procedures in a personnel manual requiring some form of written notice to be provided by an officer or employee in order to invoke rights or benefits granted to the employee under USERRA. For purposes of your question we assume that the officer or employee is an individual who is eligible for reemployment pursuant to the qualifications set forth in USERRA.
USERRA provides that "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services" is entitled to reemployment if certain qualifications are met.38 U.S.C. § 4312(a). USERRA includes a requirement that "(1) the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or verbal notice of such service to such person's employer[.]" Id. § 4312(a) (emphasis added). Notice is specifically defined in USERRA at Section 4303(8) to be "any written orverbal notification of an obligation or intention to perform service in the uniformed services provided to an employer by the employee who will perform such service or by the uniformed service in which such service is to be performed." Id. (emphasis added). USERRA also contains an exception to the notice requirement which provides that no notice is required if "the giving of such notice is otherwise impossible or unreasonable." Id.
§ 4312(b).
Although your questions appear to assume USERRA's applicability to municipalities, we emphasize that USERRA is applicable to municipalities for two reasons. First, Oklahoma has adopted USERRA as state law for members of the Oklahoma National Guard. Title 44 O.S.Supp. 2009, § 208.1[44-208.1] in pertinent part provides:
 The following provisions of federal law shall be adopted as state law and applied to members of the Oklahoma National Guard when such members are ordered to state active duty or full-time National Guard duty under Sections 501 through 507 of Title 32 of the United States Code.
 . . . *Page 6 
 2. The Uniformed Services Employment and Reemployment Rights Act (USERRA), Sections 4301 through 4333 of Title 38 of the United States Code.
Id. Based on this state law, USERRA is applicable to members of the Oklahoma National Guard.
Even had Oklahoma not adopted USERRA as state law, any requirements by a municipality to require written notice by an officer or employee in order for the officer or employee to return to employment would be preempted by USERRA. USERRA clearly states in pertinent part:
 [It] supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by [USERRA], including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.
38 U.S.C. § 4302(b).
A preemption analysis begins with the assumption that the historic police powers of the states are not superseded by federal law unless that was the clear and manifest purpose of Congress. Medtronic, Inc. v. Lohr,518 U.S. 470, 485 (1996); Cipollone v. Liggett Group, Inc., 505 U.S. 504,516 (1992). Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." Jones v.Rath Packing Co., 430 U.S. 519, 525 (1977).
Under the clear terms of the USERRA preemption statute, a state or local law is preempted if it reduces, limits or eliminates any right or benefit provided by USERRA, including establishing additional prerequisites to the exercise of any right or benefit established by USERRA. 38 U.S.C § 4302(b). This is a clear statement of congressional intent and constitutes express preemption of state or local laws establishing additional prerequisites to the exercise of rights or benefits established by USERRA. USERRA establishes a right to reemployment and provides that notice of an employee's call to military service may be given verbally or in writing. USERRA also allows notice to be given by the "appropriate officer of the uniformed service in which such service is performed." Id. § 4312(a)(1). A requirement that a municipal officer or employee give such notice in writing would establish an additional prerequisite to the exercise of the right to reemployment beyond that required by USERRA.
The language in 38 U.S.C. § 4302(b) that USERRA supersedes "any Statelaw (including any local law or ordinance), contract, agreement, policy,plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by [USERRA], including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit" is sufficiently broad to prohibit any requirement for written notice adopted or implemented by a municipality through any means, formal or informal. Therefore, if a municipality adopts an ordinance *Page 7 
requiring written notice by an employee, that ordinance is unenforceable. The same is true with regard to language in a personnel manual. Assuming the officer or employee is one covered by USERRA, a municipality may not require written notice by an officer or employee to invoke rights granted by USERRA.
 III. AN INCORPORATED CITY IS A POLITICAL SUBDIVISION FOR PURPOSES OF REQUIRING PAYMENT FOR MILITARY LEAVE PURSUANT TO 44 O.S.SUPP.2009, § 209.
Your remaining questions relate to Oklahoma statutes governing the granting of leaves of absence and payment of compensation to officers and employees called to military service. Title 44 O.S.Supp. 2009, § 209[44-209], provides that "[a]ll officers and employees of the state or apolitical subdivision thereof who are members of the Oklahoma National Guard or any reserve component of any branch of the United States military, shall, when ordered by proper authority to active or inactive service, be entitled to a leave of absence from civil employment for the period of active service, without loss of status or efficiency rating."Id. (emphasis added). The statute then sets forth how the compensation is to be paid during the leave of absence.
You ask whether an incorporated city is a political subdivision as that phrase is used in this statute. We begin by noting that the term "political subdivision" is not defined in the statutes governing leaves of absence in Title 44 or in other statutes governing rights provided to those in military service. The term "political subdivision" is defined, however, in various other places throughout the Oklahoma statutes and "[w]henever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it appears, except when a contrary intention plaining appears." 25 O.S. 2001, § 2[25-2].
For example, the Oklahoma Federal Facilities Development Act defines "political subdivision" as "a municipality, a county or a public trust, the beneficiary or beneficiaries of which are a municipality, a county or the State of Oklahoma or a combination thereof[.]" 68 O.S. 2001, § 3503[68-3503](7) (emphasis added). The Airport Zoning statutes define "political subdivision" as "any municipality, city, town, village, or county." 3 O.S. 2001, § 101[3-101](4) (emphasis added). The same definition is used in the Department of Central Services statutes which state that "political subdivision" means "any municipality, city, town, village, school or county." 74 O.S. 2001, § 90.5[74-90.5](2) (emphasis added). "Political subdivision" is defined in the Community Residential Living for Persons with Developmental or Physical Disabilities Act as "amunicipality or county, whichever holds primary jurisdiction." 60 O.S. 2001, § 862[60-862](7) (emphasis added). The Oklahoma Governmental Tort Claims Act defines a political subdivision for purposes of that statute to include a number of specific entities, including a municipality. 51 O.S.Supp. 2009, § 152[51-152](10)(a).
Although these definitions vary somewhat, they all include a municipality within the term "political subdivision." A municipality is defined in Title 11 as "any incorporated city or town[.]" *Page 8 
11 O.S. 2001, § 1-102[11-1-102](5). Thus, we conclude that an incorporated city is a political subdivision for purposes of 44 O.S.Supp. 2009, § 209[44-209], and is subject to the terms of that statute.
 IV. A CITY INCORPORATED PURSUANT TO A HOME RULE CHARTER IS SUBJECT TO 44 O.S.SUPP.2009, § 209, WHICH REQUIRES THE PAYMENT OF AN OFFICER'S OR EMPLOYEE'S COMPENSATION WHEN CALLED TO MILITARY SERVICE, AS PAYMENT OF SUCH COMPENSATION IS A MATTER OF STATEWIDE CONCERN.
You next ask whether an incorporated city organized as a home rule charter municipality under the provisions of 11 O.S. 2001 Supp. 2009, §§ 13-201 — 13-215, is a political subdivision within the meaning of 44 O.S.Supp. 2009, § 209[44-209].
Article XVIII, Section 3(a) of the Oklahoma Constitution governs the method by which a city may frame a charter for its own government. That provision states that a "city containing a population of more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this State."Id.; see also 11 O.S. 2001, § 13-101[11-13-101]. Once a charter is voted on by the people and approved by the Governor, the charter "shall become the organic law of such city and supersede any existing charter and all amendments thereof and all ordinances inconsistent with it." OKLA. CONST. art. XVIII, § 3(a). Cities organized in this manner are known as charter municipalities. 11 O.S. 2001, § 1-102[11-1-102](1) ("`Charter municipality' or `municipality governed by charter' means any municipality which has adopted a charter in accordance with the provisions of the Constitution and laws of Oklahoma and at the time of adoption of the charter had a population of two thousand (2,000) or more." Id.
The Supreme Court, in describing charter cities, stated:
 A city which adopts a home-rule charter under the provisions of Okl. Const. art. 18, [§] 3(a) is accorded full power of local self-government, and as such the city has the power to enact and enforce ordinances to protect the public peace, order, health, morals and safety of its inhabitants even though general statutes exist relating to the same subjects.
Moore v. City of Tulsa, 561 P.2d 961, 963 (Okla. 1977). However, a city's charter supersedes state law only as to "merely municipal affairs." Cityof Tulsa v. Pub. Employees Relations Bd., 845 P.2d 872, 875 (Okla. 1990). The court stated, "The determinative question is whether the issue involves a matter that is purely municipal, or whether there is a wider public interest." Id.
Under this authority, the pertinent question here is whether the payment of the salaries of officers and employees in military service is a matter of purely municipal concern or whether there is a wider public interest. Two Oklahoma cases have addressed this issue. In Reed v. Cityof Tulsa, 569 P.2d 451 (Okla. 1977), members of a firefighters' association brought an action against the City of Tulsa to *Page 9 
receive full regular pay from the City while on active duty. Id. at 453. The City argued that because Tulsa was a home rule charter city, its personnel policies and decisions were of purely local concern and controlled over conflicting state statutes. Id. The Oklahoma Supreme Court disagreed, finding that the State had the power to provide for and maintain a state militia and the right to encourage citizens to participate in the National Guard. Id. at 454. The court noted that the State exercised that right and encouraged participation in the military by making such participation financially advantageous pursuant to Section 209 of Title 44. Id. The court noted that "more than municipal interests are involved in the establishment of a state militia" and "the maintenance of a strong national defense involves more than purely local or municipal interest." Id. Thus, the municipal personnel rules were found to be superseded by state statutes dealing with the National Guard.
The same was found to be true for other military reserve components inTulsa v. Taylor, 555 P.2d 885, 888 (Okla. Civ. App. 1976), where the Oklahoma Court of Civil Appeals said, "[w]hether a person is to be influenced and encouraged to serve in the military cannot be classified as a purely local or municipal issue. . . ." Id. The court concluded that the leave policy as set out by state statutes "is a statewide benefit granted by the Legislature to all persons who recognize a duty to serve their State and Country in the Armed Services; [and] thus cannot be taken away by a city." Id.
Under these authorities, we conclude that the payment of compensation to officers and employees while on military duty is a matter of statewide concern and a home rule city organized by charter is subject to the requirements of 44 O.S.Supp. 2009, § 209[44-209].
 V. A MUNICIPALITY IS REQUIRED TO PAY ITS OFFICERS AND EMPLOYEES CALLED TO MILITARY SERVICE THE FULL REGULAR PAY THEY WOULD HAVE RECEIVED DURING THE THIRTY-DAY CALENDAR PERIOD THEY ARE ON LEAVE.
Your final questions involve the method of determining the payment of compensation to officers and employees pursuant to 44 O.S.Supp. 2009, § 209[44-209]. You do not ask for a definition of the term "employee" for purposes of military leave and Section 209 does not provide a definition. Attorney General Opinion 71-396 concluded that only those officers and employees who were employed twenty-five hours or more a week came within Section 209. Id. at 433. This conclusion was based on the definition of employee at 40 O.S. 1971, § 197.4(f), part of the Minimum Wage Act, which contained a list of definitions "[a]s used in this act." Id. The statute provided that the term "employee" did not include "[a]ny person employed as [a] part-time employee not on permanent status." Id. A part-time employee was defined as one who was employed less than twenty-five hours a week. This definition of employee still exists at 40 O.S. 2001, § 197.4[40-197.4](e)(9), which specifically excludes from the definition of employee any person employed as a part-time employee not on permanent status. That definition also excludes "[a]ny employee of any employer who is subject to the provisions of any Federal Fair Labor Standards Act or to any Federal Wage and Hour Law now in effect or enacted hereafter; and who is paying the minimum wage under the provisions of this act[.]" Id.
§ 197.4(e)(7). It also excludes "[a]ny employee employed in a bona fide executive, administrative *Page 10 
or professional capacity, or in the capacity of outside salesman" from the definition of employee. Id. § 197.4(e)(8).
A review of the definition of "employee" with its exceptions shows that the definition is specifically limited to the Minimum Wage Act, and is to be used for purposes of determining those persons excluded from the requirement of being paid minimum wages. While Oklahoma law provides that definitions used in one statute will be used in other places unless a contrary intent is shown, 25 O.S. 2001, § 2[25-2], to apply the definition of "employee" from the Minimum Wage Act to Section 209 governing military leave would be contrary to the intent of the Legislature, as it would prevent persons such as those subject to the provisions of a federal wage and hour law and those employed in an executive, administrative, or professional capacity from receiving a military leave of absence. This was not the intent of the Legislature in encouraging liberal military leave for state and municipal employees. Therefore, we conclude the definition of "employee" in the Minimum Wage Act should not be applied to Section 209 governing military leave. Attorney General Opinion 71-396 is overruled to the extent that it applied the definition of "employee" from the Minimum Wage Act to the statute governing military leave.
A city is required to compensate its officers and employees called to military service with their full regular pay pursuant to 44 O.S.Supp. 2009, § 209[44-209]. To quote again the pertinent part of the statutory provision:
 During the first thirty (30) calendar days for employees of political subdivisions or the first thirty (30) regular scheduled work days for state employees of the leave of absence in any federal fiscal year, the officers or employees shall receive their full regular pay from the employing state agency or political subdivision. During the remainder of the leave of absence in any federal fiscal year, the employing state agency or political subdivision may elect to pay them an amount equal to the difference between the officers' or employees' full regular pay from the employing state agency or political subdivision and their Oklahoma National Guard or United States military reserve component pay. . . .
Id. (emphasis added). This statute requires full regular pay for all employees for the first thirty calendar days and allows a municipality the discretion to elect to pay the difference between full regular pay and military pay during the remainder of the leave of absence. The requirement of full regular pay applies to both salaried and hourly employees.
You first ask whether a city is required to pay a salaried employee who is called to military service an amount equal to the employee's compensation converted to a daily rate multiplied by thirty. The statute requires a city, for the first thirty calendar days of an officer or employee's leave of absence, to pay the officer or employee his or her full regular pay. The statute does not define "full regular pay" and does not specifically address how the amount of this payment is to be calculated. Id. However, the plain language of the statute leads to our conclusion that full regular pay refers to the amount of compensation the officer or employee would have received for the first thirty calendar days had the *Page 11 
officer or employee not been on military leave. The purpose is to compensate the officer or employee such that the same compensation is received as if the officer or employee had been working.
The term "salary" is defined as "fixed compensation paid regularly for services." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1031 (10th ed. 1998). Salaried employees are paid a yearly fixed salary regardless of the number of hours actually worked during the year and compensation is not based on the number of hours actually worked. Payment for salaried employees is most accurately determined by converting the employee's yearly salary to a daily rate and multiplying that number by thirty. For instance, an employee who is paid $60,000 per year would be paid $4,931.50 for thirty calendar days. This number is determined by dividing $60,000 by 365 and multiplying that number (164.38) by thirty. This results in the normal pay a salaried officer or employee would have received during that period of time. In this calculation, the thirty-day time period begins on the day the officer or employee begins his or her military service.
To summarize, a salaried officer or employee who is called to military service is entitled to be paid an amount equal to the employee's yearly salary converted to a daily rate and multiplied by thirty. This does not result in a windfall to the officer or employee as salaried employees are paid based on a yearly salary regardless of the hours actually worked.
You also ask whether, pursuant to 44 O.S.Supp. 2009, § 209[44-209], a city is required to pay an hourly officer or employee an amount equal to compensation which would have been paid to the employee for a period of thirty days. The phrase "full regular pay" as applied to hourly employees requires a city to pay the employee what the officer or employee would have been paid had the officer or employee not taken a leave of absence. For example, employee Doe typically works twenty hours a week for a city. He does this by working four hours a day for five days a week, Monday through Friday. Because the employee does not work weekends, he would be paid for four hours a day for the first 30 calendar days of his leave of absence, excluding weekends.
Our analysis of the previous question requires us to answer "yes" to your final question of whether a city may base its payment to hourly officers or employees on the number of days they would have actually worked during the thirty-day period, thereby reducing the number of days to some number less than thirty. As to salaried officers or employees, a city must pay them the amount they would have received for a thirty-day calendar period had they not been called to military service.
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301 — 4335, establishes a right for an employee called to military service to return to civilian employment under certain circumstances. USERRA requires an employee, or the appropriate officer of the uniformed service in which such service is performed, to give either written or verbal notice to an employer of the *Page 12 employee's call to military service. Id. § 4312(a) (West, Westlaw through Nov. 11, 2009).
 2. Oklahoma adopted USERRA as State law for the Oklahoma National Guard. 44 O.S.Supp. 2009, § 208.1[ 44-208.1](2). USERRA preempts any state or local law that establishes additional prerequisites to the exercise of any right or benefit provided by USERRA. 38 U.S.C. § 4302(b). For those officers and employees covered by USERRA, a municipality may not require written notice from an officer or employee called to military service for the officer or employee to be able to return to covered employment, as such a requirement would be an additional prerequisite not established by USERRA.
 3. For those officers and employees covered by USERRA, a municipality may not lawfully adopt an ordinance or implement procedures in a personnel manual requiring some form of written notice to be provided by an officer or employee in order to invoke rights granted to the employee under USERRA. 38 U.S.C. §§ 4302(b), 4303(8), 4312(a).
 4. Title 44 O.S.Supp. 2009, § 209[44-209] requires a political subdivision to pay the full regular salary for the first thirty calendar days when an officer or employee who is a member of the Oklahoma National Guard or any reserve component of any branch of the United States military is called to military service. An incorporated city is a "political subdivision" as that term is used in Section 209. 11 O.S. 2001, § 1-102(5).
 5. An incorporated city organized under a home rule charter pursuant to 11 O.S. 2001 Supp. 2009, §§ 13-101 — 13-115, is required to comply with the terms of 44 O.S.Supp. 2009, § 209[44-209], as payment of the compensation of those called to military service is a matter of statewide concern. Reed v. Tulsa, 569 P.2d 451, 454 (Okla. 1977); Tulsa v. Taylor, 555 P.2d 885, 888 (Okla. Civ. App. 1976).
 6. Under 44 O.S.Supp. 2009, § 209[44-209], a city is required to pay a salaried officer or employee who is a member of the Oklahoma National Guard or any reserve component of any branch of the United States military and who is called to military service an amount equal to the employee's full regular pay during the first thirty-day calendar period. Full regular pay is determined to be the normal compensation an officer or employee would have received during that thirty-day calendar period. This amount may be calculated by converting a salaried officer or employee's annual compensation to a daily rate and multiplying that rate by thirty. *Page 13 
 7. A city is required, by the terms of 44 O.S.Supp. 2009, § 209[44-209], to pay an hourly officer or employee an amount equal to the compensation that would have been paid to the officer or employee for the first thirty calendar days of the leave of absence. This amount is calculated by determining the hours the officer or employee would have worked during that time period had he or she not been called to military service and multiplying that number by the officer's or employee's hourly rate. This could reduce the number of days for which payment is made to a number less than thirty.
W.A. DREW EDMONDSON OKLAHOMA ATTORNEY GENERAL
SANDRA D. RINEHART SENIOR ASSISTANT ATTORNEY GENERAL
[1] See Pub.L. 103 353, 108 Stat. 3149 (codified as amended at38 U.S.C. §§ 4301 — 4335).
[2] This is not Oklahoma's only statute governing leaves of absence for military duty. Oklahoma statutes at 72 O.S. 2001 Supp. 2009, §§ 48, 48.1 and 48.2 govern leaves of absence for public employees and private sector employees, extension of professional licenses during active duty, and pay for military leave under certain circumstances. Title 51 O.S. 2001, §§ 25.4[51-25.4], 25.5 and 25.7 apply to restoration of positions of employment under limited circumstances. *Page 1