2005 OK CIV APP 43

**ORTHOPEDIC HOSPITAL OF OKLA-HOMA, an Oklahoma Limited Liability Company, Plaintiff/Appellee,**

v.

**The OKLAHOMA STATE DEPARTMENT OF HEALTH; The Oklahoma State Board of Health; The State Commissioner of Health, in his official capacity, Defendants/Appellants.**

**No. 100,354.**

Court of Civil Appeals of Oklahoma, Division No. 1.

June 3, 2005.

---

Linda G. Scoggins, Scoggins & Cross, PLLC, Oklahoma City, OK, for Plaintiff/Appellee.

Gary W. Gardenhire, Nick E. Slaymaker, Charles L. Broadway, Ken Feagins, Oklahoma City, OK, for Defendants/Appellants.

Opinion by BAY MITCHELL, Judge.

¶1 Defendants, the Oklahoma State Department of Health, the Oklahoma State Board of Health, and the Oklahoma State Commissioner of Health (collectively the "State of Oklahoma"), appeal from a trial court order granting summary judgment to Plaintiff, Orthopedic Hospital of Oklahoma, L.L.C. (Orthopedic Hospital), on the ground that 63 O.S. Supp.1999 § 1–702b is unconstitutional, and permanently enjoining the State of Oklahoma from enforcing the statute or its regulations. The trial court determined the statute was unconstitutional under § 1 of the Fourteenth Amendment to the United States Constitution, and pursuant to the following provisions of the Oklahoma Constitution: Art. 10, § 14 (prohibition against levying taxes for other than public purposes); Art. 10, § 15 (prohibition against the State making a gift to any company, association, or corporation); Art. 10, § 20 (prohibition against imposing taxes for the benefit of any county, city, town, or other municipal corporation); Art. 5, § 33 (prohibition against enacting revenue bills in the last five days of a session); and Art. 5, § 59 (prohibition against special laws when a general law is applicable).

¶2 Section 1–702b requires all hospitals, specialty hospitals, and ambulatory surgery centers that had not received approval to construct a new facility by July 1, 1999, to provide proof that *at least 30% of their gross income* was received from Medicare; Medicaid; "uncompensated care," which includes bad debt and charity care; and corporate tax contributions, which include state and federal corporate taxes, as well as state property taxes. For any assessable facility that did not meet this 30% threshold, the Commis-

sioner of Health assessed a "fee" for the difference between their income from the enumerated sources and the 30% threshold, to be deposited into an uncompensated care fund.[1] The Commissioner then distributed the funds from the uncompensated care fund on a pro rata basis among all the facilities that received more than 30% of their gross annual revenue from the enumerated sources. *Id.* The statute prevented any portion of the uncompensated care fund from being used for any purpose other than described in the statute, and prohibited the funds from reverting to the General Fund. *Id.* However, neither the statute nor the interpreting regulations at OAC 310:668-1-1 to 310:668-9-2 provided any other limits on the use of the money by facilities that received distributions from the uncompensated care fund. *See id.*[2]

¶3 Orthopedic Hospital is an Oklahoma limited liability company that owns and operates an orthopedic specialty hospital in Tulsa. They received approval in 2000 to renovate three floors of an existing hospital, and began operating in 2001. Orthopedic Hospital did not believe they would be an assessable hospital pursuant to § 1-702(b), because they were renovating part of an existing facility instead of constructing a new facility. However, the Department of Health determined Orthopedic Hospital was a new facility that received permission to construct after the cut off date, and assessed a fee of $107,018 against them for the 2001 year. Orthopedic Hospital objected on constitutional grounds, and also objected to the method of computation of the assessment. They filed a claim for declaratory and injunctive relief.

■ ¶4 Summary judgment is appropriate when there are no genuine issues of material fact and the applicant is entitled to summary judgment as a matter of law. *Casey v. Ca-*

sey, 2005 OK 13, ¶ 7, 109 P.3d 345, 348. This case presents only questions of law regarding whether § 1-702(b) is constitutional. Thus, our review is *de novo,* and we will not give any deference to the trial court's legal rulings. *Id.* When the constitutionality of a legislative act is challenged, "there is a presumption in favor of its validity, and this Court is not at liberty to evaluate the desirability or wisdom of the act." *Tulsa County Deputy Sheriff's Fraternal Order of Police v. Board of County Comm'rs of Tulsa County,* 2000 OK 2, ¶ 6, 995 P.2d 1124, 1128. We find this statute to be unconstitutional under Art. 10, sections 14 and 15, as well as under Art. 5, section 59 of the Oklahoma Constitution.

### SECTION 1-702B VIOLATES ART. 10, § 14 OF THE OKLAHOMA CONSTITUTION BECAUSE IT ASSESSES A TAX AND DISTRIBUTES IT TO PRIVATE ENTITIES WITHOUT ANY GOVERNMENTAL CONTROL.

■ ¶5 Article 10, § 14 of the Oklahoma Constitution requires in relevant part that "taxes shall be levied and collected by general laws, and for public purposes only ..." The first question is whether § 1-702b, which states it only imposes a "fee," is in fact a tax that is subject to the public purpose restriction of Art. 10, § 14. Citing 51 Am. Jur., Taxation, § 3, the Oklahoma Supreme Court defined a "tax" as follows:

... *a forced burden, charge, exaction, imposition or contribution* assessed in accordance with some reasonable rule of apportionment by authority of a sovereign state upon the persons or property within its jurisdiction, to provide public revenue for the support of the government, the administration of the law, *or the payment of public expenses.*

---

1. Presumably, the statute's intent was that the income from Medicare and Medicaid, the amount of uncompensated care, and the taxes paid would be added together. If that sum was less than 30% of the gross income, the fee would be assessed.

2. This statute was amended in November of 2003, just before the trial court granted summary judgment, and again in 2004 after the court had already ruled. Some of the changes in the 2003

amendment included changing the 30% threshold from gross revenue to net revenue, and removing bad debt from the calculation. The 2004 amendment changed the statute so that only facilities that received approval to construct after July 1, 2006, would be assessable, and made other changes. However, Orthopedic Hospital would still be subject to the fee assessed in 2001 pursuant to the 1999 version of § 1-702b, so this case is not moot.

*Olustee Co-op. Ass'n v. Oklahoma Wheat Utilization Research & Market Devel. Comm'n*, 1964 OK 81, ¶ 8, 391 P.2d 216, 218 (emphasis added) (holding a fee imposed on wheat growers of a certain portion of wheat per bushel was a tax).

¶ 6 Here, the "fee" assessed pursuant to § 1–702b could be as much as 30% of the annual gross revenue of a facility, and would clearly be a financial burden on the assessed hospitals.[3] The "fee" is assessed under the authority of the State of Oklahoma for the stated purpose of helping with the burden of paying the public expense of indigent care. The statute also establishes a set rule of apportionment based on the 30% threshold. The assessment under § 1–702b clearly falls within the definition of a tax, regardless of the name attached by the Legislature.

■ ¶ 7 The next question is whether the tax was enacted for a public purpose. The Oklahoma Supreme Court has emphasized in order to be for a public purpose, money raised by taxation must be expended for the public good, and the appropriation must also be controlled by the public agency directly or by a contractual agreement. *Veterans of Foreign Wars v. Childers*, 1946 OK 211, ¶¶ 18, 24, 171 P.2d 618, 622, 624. In *Veterans of Foreign Wars*, the Court held appropriating tax money directly to a private entity to assist members of the armed forces served a valuable and beneficial purpose, but was not a "public purpose" because the tax was distributed directly to a private organization without any control by the State. *Id.* Similarly, in *Vette v. Childers*, 1924 OK 190, 228 P. 145, 148, the Court noted a business might be "affected with a public interest, and therefore subject to state regulation and control," but not be able to be assisted by state funds if it was owned or operated by a private entity and there was no control by the State. The Court held an appropriation of tax funds to a system of warehouses for the storage of agricultural products would benefit the public indirectly, but because the direct beneficiary of the appropriation was the group of people who owned and operated the warehouses, the tax was not for a public purpose and was unconstitutional under § 14. *Id.* at 149.

¶ 8 Recently, in *Way v. Grand Lake Ass'n, Inc.*, 1981 OK 70, ¶ 36, 635 P.2d 1010, 1016, the Supreme Court reaffirmed the holdings of *Veterans of Foreign Wars* and *Vette, supra*, emphasizing that in addition to having a purpose that is public in nature, "the purpose must be performed *by the state* in the exercise of its governmental functions." (emphasis added). The Court determined the Oklahoma Tourism and Recreation Act, which authorized appropriations to private organizations, was in the nature of a *unilateral contract* between the state agency and the private entity because of the detailed conditions and governmental controls and safeguards required to obtain the appropriations. *Id.*, ¶¶ 30, 40, 635 P.2d at 1015, 1018; *see also State ex rel. Lacy v. Jackson*, 1983 OK 122, ¶¶ 4–5, 682 P.2d 218, 219 (citing *Veterans of Foreign Wars* and *Vette, supra*, to hold a municipality could not appropriate public funds for the printing and distribution of a newspaper published by a private entity).

¶ 9 The State of Oklahoma asserts the statute was enacted for the public purpose of spreading the burden of providing indigent care equally upon all facilities in the State and encouraging facilities to provide care to indigents. The problem, however, is that taxes raised will be distributed to private facilities without any government control or contractual requirements to utilize the money to provide indigent care. The money is simply given to the facilities with no restrictions on how to use the money. Defendants argue the important government interest of encouraging facilities to provide indigent care is a sufficient public purpose. However, this is merely an argument that the public will receive an indirect benefit from the distribution of these tax proceeds. As in *Vette, supra*, the direct beneficiaries of public tax dollars will be private corporations who will not be

---

3. The fee is also calculated based on gross revenue, which is the amount actually charged for patient care before any discounts, charge offs, etc. are applied. It is common knowledge that the amount charged by a hospital is usually higher than the amount they receive, even by patients who are insured. With the fee based on gross income, facilities are forced to pay an even higher percentage of their net income.

controlled in any manner by the State of Oklahoma. Thus, this statute is unconstitutional pursuant to Article 10, § 14 of the Oklahoma Constitution.

### SECTION 1–702B VIOLATES ART. 10, § 15 OF THE OKLAHOMA CONSTITUTION BECAUSE IT CONSTITUTES A GIFT TO PRIVATE ENTITIES.

■ ¶ 10 Article 10, § 15 of the Oklahoma Constitution prohibits the Legislature from making a gift of public monies to any company, association or corporation. A "gift" includes all appropriations for which there is no authority or enforceable claim against the State. *Carter v. Thomas,* 1935 OK 653, ¶ 11, 46 P.2d 460, 461; *see also Childrens Home & Welfare Ass'n v. Childers,* 1946 OK 180, ¶ 4, 171 P.2d 613, 614 (stating gifts are gratuitous transfers of the state's property without consideration).

¶ 11 In *University Hospitals Authority,* 1997 OK 162, ¶ 18, 953 P.2d 314, 320, the Court held the long term lease of university hospitals to private corporations was not a gift within the meaning of § 15, because there was sufficient consideration to the State to prevent the transaction from being a gift. The State would be able to eliminate a multimillion dollar annual loss and also gain the potential to earn 1.1 billion dollars over the fifty-year term of the lease. *Id.* In addition, funds appropriated to pay for services under an Indigent Care Agreement were "services" that could be contracted for just the same as computer services, etc., and paid for with appropriated funds. *Id.; see also Children's Home & Welfare Ass'n,* ¶ 4, 171 P.2d at 614 (holding a contract between the State and a children's home to care for orphaned children did not violate Art. 10, § 15, because the payment of appropriated funds was in return for services the State had a duty to provide).

¶ 12 Here, however, § 1–702b does not require any contract for services or place strict guidelines on the use of the funds as in *Childrens Home & Welfare Ass'n* or *University Hospitals Authority, supra.* Instead, the distributions from the uncompensated care fund are voluntary and lack any consideration. The beneficiary facilities would not have any enforceable claim against the State for these distributions. As stated in *Veterans Foreign Wars,* ¶ 31, 171 P.2d at 625, when finding appropriations to the Veterans of Foreign Wars was an unconstitutional gift, "[h]aving no connection with the state, this organization has no right to look to the state for financial maintenance, and *having no claim on the state, money received by it is a gift* within the constitutional intent ..." The distributions here are given to private entities who do not have any contractual obligations to provide indigent care or any contractual rights to receive payment for providing indigent care. Thus § 1–702b is also unconstitutional under Art. 10, § 15 of the Oklahoma Constitution.

### SECTION 1–702B VIOLATES ART. 5, § 59 OF THE OKLAHOMA CONSTITUTION BECAUSE IT IS AN IMPERMISSIBLE SPECIAL LAW.

■ ¶ 13 Article 5, § 59 requires that "[l]aws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted." A three-pronged inquiry is necessary to determine whether a statute is constitutional under § 59: 1) Is the statute a special or a general law? 2) If it is a special law, is a general law applicable? and 3) If not, is the statute a permissible special law? *Reynolds v. Porter,* 1988 OK 88, ¶ 13, 760 P.2d 816, 822. Under the first prong, we must determine whether the statute singles out less than the entire class of similarly situated persons or things for different treatment. *Id.,* ¶ 14, 760 P.2d at 822. Under the second prong, we must determine if the subject of the legislation is reasonably susceptible of general treatment or if there is a special situation possessing characteristics impossible of treatment by general law. *Id.,* ¶ 15, 760 P.2d at 822. "Where a statute operates upon a class, the classification must not be capricious or arbitrary and ... there must be some distinctive characteristic upon which a different treatment may be reasonably founded ..." *Haas v. Holloman,* 1958 OK 174, ¶ 18, 327 P.2d 655, 659. Under the third prong, the court must deter-

mine if the special legislation is reasonably and substantially related to a valid legislative objective, and if so, it is a valid special law. *Id.*, ¶ 16, 760 P.2d at 822.

¶ 14 The classification drawn in § 1–702b is between hospitals, specialty hospitals and ambulatory surgery centers that are already constructed or have received approval to construct a new facility from the Commissioner of Health by July 1, 1999, and those who have not received such approval before the cut-off date. If facilities fall within the first group, *this taxation statute will never apply to them* and they will never have to pay up to 30% of their gross income to help pay for indigent care in the State of Oklahoma. However, for the second group of assessable facilities who receive approval to construct facilities after the cut-off date, a second classification is applied. If the combined sum of Medicare and Medicaid revenues, the amount of uncompensated care or bad debt and corporate tax payments equals at least 30% of those facilities' gross income, they are not assessable for that year. If they do not reach that 30% threshold, however, they are assessed a "fee" for the difference, and the fee is deposited by the Commissioner into an uncompensated care fund. Disbursements are then made to facilities that exceed the 30% threshold. Significantly, there is no restriction in the statute that would prevent facilities in the first group (pre July 1, 1999) from reporting their income and receiving distributions from the fund even though they will never be assessed the fee. This is a special law because it classifies between facilities constructed before and after July 1, 1999.

¶ 15 Next, we must determine whether a general law could have reasonably satisfied the purpose of this legislation. The stated purpose of this statute, according to the Department of Health, is to "distribute

the burden of providing health care to the indigent *evenly upon all affected health care providers.*" This purpose could have been accomplished by a general law that assessed all hospitals that do not meet the 30% threshold. There is no rational basis for applying the effective date of the statute as the dividing line between assessable hospitals. In fact, excluding all facilities that existed before July 1, 1999, contradicts the purpose of distributing the burden equally upon all facilities, because the facilities in the first group would never be assessed the fee regardless of how little indigent care they provided.[4] When assessable facilities are compared to facilities in the first group who will never have to pay these fees, it is clear this statute imposes significant tax burdens on new facilities based on an arbitrary and irrational classification. We hold this statute to be an invalid special law that violates Art. 5, § 59.

¶ 16 The State of Oklahoma argues that if the cut-off date creates an unacceptable special law, the proper remedy is to sever that provision and make all medical facilities subject to § 1–702b. Severing an unconstitutional provision of an act is not appropriate if it creates a result not intended by the Legislature. *Tulsa Exposition & Fair Corp. v. Board of County Comm'rs of Tulsa County*, 1970 OK 67, ¶ 23, 468 P.2d 501, 507. Here, the classification of facilities based on the cut-off date appears to be an integral part of the statute. We cannot sever this provision and make all facilities subject to the fee because it would create a result that was not intended by the Legislature. Further, even if we severed this classification, the statute would still be unconstitutional under Art. 10, sections 14 and 15.

¶ 17 We decline to address the remaining constitutional issues based on our findings that the statute is unconstitutional pursuant to Art. 10, sections 14 and 15, and Art. 5,

---

4. The State also maintains § 1–702b distributes the economic burden of providing indigent care by transferring funds to those facilities that "in fact" provide indigent care. However, the 30% upon which the statute is based does not really measure the amount of indigent care provided. For example, Medicare is included in the calculation, but Medicare is also provided for people who have retired regardless of income status and

is not necessarily tied to indigent care. In addition, the statute allows bad debt to be included in the calculation, which could allow a hospital to benefit from bad collection practices. Further, the federal and state corporate taxes, as well as property taxes are included in the calculation, so assessable facilities could be partially subsidizing the tax burdens of beneficiary facilities.

section 59 of the Oklahoma Constitution. *Veterans of Foreign Wars*, ¶ 39, 171 P.2d at 626 (declining to address further constitutional provisions after finding statute unconstitutional under Art. 10, sections 14 and 15 of the Oklahoma Constitution); *Olustee Co-op. Assoc.*, ¶ 17, 391 P.2d at 219 (stating it is unnecessary to consider alternative constitutional basis after finding statute unconstitutional under another provision of the Oklahoma Constitution).

¶ 18 Because 63 O.S. Supp.1999 § 1–702b is unconstitutional as set forth above, the order granting summary judgment to Orthopedic Hospital and enjoining the State of Oklahoma from enforcing its provisions is affirmed.[5]

¶ 19 AFFIRMED.

ADAMS, P.J., and JOPLIN, J. (sitting by designation), concur.

---

**5.** This opinion is limited to the constitutionality of the 1999 version of § 1–702b in effect at the time Orthopedic Hospital was assessed the fee at issue in this case. We do not here address the 2004 version of the statute. We note, however, that some of the same problem provisions remain in the current version of the statute.