Question Submitted by: Richard Lillard, Chairman, Oklahoma Housing Finance Agency
2017 OK AG 4
Decided: 06/02/2017
Oklahoma Attorney General Opinions

Cite as: 2017 OK AG 4, __ __

 
¶0 This office has received your request for an Official Attorney General Opinion in which you ask, in effect, the following question:
If the Oklahoma Housing Finance Agency, a public trust, uses monies from its trust estate to create an emergency fund to assist Oklahoma citizens displaced by natural disaster to secure temporary housing, would expenditures from that fund violate the gift prohibition of Article X, Section 15 of the Oklahoma Constitution?
I.
Background
A. Public Trusts in Oklahoma
¶1 Oklahoma trust laws provide for the formation of express trusts having public entities as their beneficiaries. See 60 O.S.2011 & Supp.2016, §§ 176-180.4; see generally M. Thomas Arnold, Public Trusts in Oklahoma, 19 Tulsa L.J. 192 (1983). Beneficiaries may include the State of Oklahoma, any of its counties or municipalities, or any combination thereof. 60 O.S.Supp.2016, § 176(A). Public trusts may be created to, among other things, "provide funds for the furtherance and accomplishment of any authorized and proper public function or purpose of the state[.]" Id.; see also Shotts v. Hugh, 1976 OK 73, ¶13, 551 P.2d 252, 254 ("Trusts for the benefit of the public may be established with a broad field of objectives as long as the objectives encompass a benefit to a large class of the public or lessen the burdens of government."). In cases where the State is the trust beneficiary, the trust must be approved by the Legislature and the Governor, the trust instrument must be approved as to form by the Attorney General, and the beneficial interest in the trust must be accepted by the Governor. 60 O.S.2011 & Supp.2016, §§ 176(A), 177.
¶2 The trustees of a public trust are deemed an "agency of the state," see 60 O.S.2011, § 179, but it is "presumed for all purposes of Oklahoma law" that the trust itself "[e]xist[s] as a legal entity separate and distinct from...the governmental entity that is its beneficiary." Id. § 176.1(A)(2). Similarly, the affairs of a public trust are a considered "separate and independent from the affairs of the beneficiary in all matters or activities...including, but not limited to, the public trust's budget, expenditures, revenues and general operation and management of its facilities or functions[.]" Id. § 176.1(D). Because of this unique construct, laws that normally apply to governmental entities receive varying application as to public trusts. Compare 25 O.S.2011, § 304(1) (requiring public trusts to comply with the Open Meeting Act) and 75 O.S.2011, § 250.5 (requiring State-beneficiary public trusts to comply with the Administrative Procedures Act), with Okla. City Zoological Trust v. State ex rel. Pub. Emp. Rel. Bd., 2007 OK 21, ¶ 8, 158 P.3d 461, 465 (emphasizing that a public trust was a separate legal entity from its municipal beneficiary and therefore holding that the trust was not subject to the Oklahoma Municipal Employee Collective Bargaining Act) and A.G. Opin. 96-47, at 115 (concluding that a State-beneficiary public trust is not an "agency" subject to the Oklahoma Personnel Act).
B. The Oklahoma Housing Finance Agency
¶3 The Oklahoma Housing Finance Agency ("OHFA") is a public trust created pursuant to Title 60, Section 176(A)(1) by trust indenture executed on May 1, 1975. See OHFA Third Amended Trust Indenture (Sept. 24, 2002) (hereafter, the "Trust Indenture") (on file with author). OHFA operates for the benefit of the State by fulfilling the public purposes set forth in the Trust Indenture. See id., p. 1. These purposes include, but are not limited to, the following:
(3) To formulate, develop, and administer...short or long range...programs, plans or activities relating to the improvement of the housing for Residential Use or economic and environmental conditions of residents of the State in order to provide...assistance, services, facilities and resources for the benefit of the people of the State;
(5) To provide funds and assistance for the purposes set out in [the Trust Indenture]; and
(6) To...supply services...for the conservation and implementation of the public welfare and protection and promotion of the public health...to such extent and in such manner as now is or hereafter shall be a proper function of the [State] as or if expressly authorized by law for the furtherance of the general convenience, welfare, public health and safety of the State of Oklahoma and its inhabitants. 
Id. art. IV, pp. 6-7.
¶4 In accepting the beneficial interest in the Trust Indenture, the Governor "affirm[ed] the designation of OHFA as an agency of the state and the regularly constituted authority of the Beneficiary[.]" Trust Indenture art. II, p. 3 (emphasis added); see also Approval and Acceptance of Trust Indenture (Aug. 19, 2002) (on file with author). Despite this characterization, indebtedness incurred by the Trustees on behalf of OHFA "shall not constitute an indebtedness of the [State]," but instead "shall constitute obligations of OHFA payable solely from the Trust Estate[.]" Trust Indenture art. VII, p. 13. Similarly, the State has "no legal title, claim, or right to the Trust Estate, its income, or to any part thereof, or to demand or require any partition or distribution thereof." Id. art. IX, p. 23. Funds that make up OHFA's trust estate[1] are generated primarily through the issuance of bonds, investment income, and the administration of various housing programs. See OHFA Financial Statements, p. 3 (Jan. 24, 2017);[2] see also OAC 330:10-5, 35-5-7, 50-1-1.
¶5 With this background in mind, we consider the effect of Article X, Section 15 of the Oklahoma Constitution on OHFA's use of funds in its trust estate.
II. 
Discussion
A. Because OHFA's trust estate is not made up of public funds, the gift prohibition of Article X, Section 15 does not restrict OHFA's use of those funds. 
¶6 Article X, Section 15 of the Oklahoma Constitution prohibits the State from, among other things, "mak[ing a] donation by gift, subscription to stock, by tax, or otherwise, to any company, association or corporation." Okla. Const. art. X, § 15(A). For purposes of Section 15, a gift is "a gratuitous transfer of the property of the state voluntarily and without consideration." Hawks v. Bland, 1932 OK 101, ¶ 22, 9 P.2d 720, 722 (emphasis added); see also Orthopedic Hospital of Okla. v. State Dept. of Health, 2005 OK CIV APP 43, ¶ 10, 118 P.3d 216, 222 (Section 15 prohibits "making a gift of public monies to any company, association or corporation.") (emphasis added). Accordingly, to determine whether the restrictions in Section 15 would apply to expenditures from OHFA's trust estate, we must ascertain whether the trust estate consists of public funds.
¶7 The Oklahoma Supreme Court addressed a similar question, albeit in a different context, in Bd. of Cty. Comm'rs of Okla. Cty. v. Warram, 1955 OK 198, 285 P.2d 1034. In that case, the Court considered whether a bond issuance by a public trust indebted Oklahoma County, the trust's beneficiary, in violation of Article X, Section 26 of the Oklahoma Constitution. Id. ¶ 44, 285 P.2d at 1041. The purpose of Section 26, the Court explained, was to limit the ability of political subdivisions to incur debt that is "chargeable to general governmental funds, for the payment of which resort may be made to taxation." Id. ¶ 45, 285 P.2d at 1041. Because the trust estate "d[id] not have [its] origin in public funds nor in the proceeds of taxation or the operations of the governmental beneficiary itself," the debt incurred through the bond issuance did not violate Section 26. Id. ¶¶ 45, 49, 285 P.2d at 1042.
¶8 Relying in part on the Court's holding in Warram, we concluded in Attorney General Opinion 86-131 that the Article X, Section 15 prohibition on the State owning stock in a corporation did not apply to Oklahoma Ordnance Works Authority ("OOWA"), a state-beneficiary public trust, because OOWA was a separate legal entity that did not receive "general governmental funds." A.G. Opin. 86-131, at 186;[3] see also A.G. Opin. 86-70, at 114 ("While public trust funds are cloaked with a public interest they are not considered 'public funds' which the State in its sovereign capacity collects from its taxpayers."). Similarly, in Attorney General Opinion 2004-6 we relied on Warram in opining that a municipal-beneficiary public trust may gift property to a public higher education institution if permitted by trust indenture. In so doing, we noted our conclusion in Attorney General Opinion 86-131 that gratuitous transfers by a public trust are not limited by Article X, Section 15, but rather by the fiduciary duties of the trustees. A.G. Opin. 2004-6, at 37.
¶9 Collectively, Warram and our previous Opinions stand for the proposition that where a public trust does not receive appropriated funds that are generated by the State's taxation power or by operations of the State itself, the trust funds are not the type of "public" funds that Article X, Section 15 is designed to protect. See, e.g., A.G. Opin. 86-131, at 185 ("The limitations on public funds found at Article X, Section 15, with reference to stock ownership, clearly do not apply to the funds of public trusts which are generated outside the public treasure."). As mentioned above, our understanding is that the funds making up OHFA's trust estate are not received from tax revenues, nor from operations of the State itself.[4] See, e.g., OHFA Financial Statements, p. 3. Rather, OHFA is a self-supporting entity and funds in its trust estate are generated solely by OHFA's own programs and operations. Id. Accordingly, we conclude that expenditures from the trust estate are not restricted by the gift prohibition in Article X, Section 15.
B. Even if the funds in OHFA's trust estate were subject to the limitations of Article X, Section 15, expenditures to create an emergency fund would be permissible.
¶10 As noted above, a "gift" for the purposes of Section 15 is "a gratuitous transfer of the property of the state voluntarily and without consideration." Hawks v. Bland, 1932 OK 101, ¶ 22, 9 P.2d at 722 (emphasis added). Thus, if the State receives consideration in exchange for the property, the transfer is not a gift. Id. Consideration may take many forms, and "may be measured by [a] benefit to one party or by [a] forbearance, detriment, loss or responsibility assumed by the other party." Burkhardt v. City of Enid, 1989 OK 45, ¶ 13, 771 P.2d 608, 611.
¶11 For example, in Childrens Home & Welfare Ass'n v. Childers, 1946 OK 180, 171 P.2d 613, payments from the State to a private facility that provided care to orphaned children were challenged as violating Section 15. The Oklahoma Supreme Court found that because the State had a duty to protect such children and because the home provided a service to the State by assuming that duty, the State had received adequate consideration for the payments. Id. ¶¶ 4-5, 171 P.2d at 613-14. Accordingly, the Court found no violation of Section 15. Id.
¶12 In another example, the Court considered a municipality's use of public funds to purchase a private university campus in order to lease it back to the university.[5] Burkhardt v. City of Enid, 1989 OK 45, 771 P.2d 608. This arrangement, the Court noted, allowed the struggling university to remain open, thus providing the municipality with educational, economic, and social benefits from the university's continued viability. Id. ¶ 11, 771 P.2d at 611. Moreover, the municipality received consideration in the form of lease obligations assumed by the university. Id. ¶ 13, 771 P.2d at 611. Based on these findings, the Court held that the municipality's expenditures were not a gift of public property. Id. As these cases illustrate, consideration may be in the form of a benefit or service provided to the State or the assumption of a State obligation.
¶13 Here, we understand the purpose of the proposed emergency fund would be to assist Oklahomans displaced by natural disaster to find temporary housing. As explained in your request, the program would be comparable to a federally-funded, OHFA-administered initiative from 2013, which paid certain temporary housing expenses, such as hotel costs, first month's rent, and/or utility deposits, upon verification that the applicant resided in a declared disaster area. See OHFA Okla. Disaster Relief Assist Program 2013 Eligibility Requirements (on file with author).
¶14 In this scenario, even if we were to assume that Section 15 applies to OHFA as it does the State, we conclude that payments from the emergency fund would be permissible because the State would receive consideration in exchange. Specifically, such payments would benefit the State by providing emergency assistance to displaced citizens. Not only would this further OHFA's purposes, as set forth in the Trust Indenture, but it would also be consistent with the State's obligations to mitigate homelessness and to ensure preparedness and protect public peace, health, and safety in the face of disaster. See, e.g., 74 O.S.2011, § 2900.1 (Oklahoma Homeless Prevention Act), 63 O.S.2011, § 683.2 (Emergency Management Act of 2003). We would caution, however, that if the program were to be administered in a manner other than described herein, our conclusion regarding the presence or absence of consideration may be different.
¶15 It is, therefore, the official Opinion of the Attorney General that:
1. The Oklahoma Housing Finance Agency is a public trust created pursuant to 60 O.S.Supp.2016, § 176(A)(1) with the State of Oklahoma having accepted the beneficiary interest. It is therefore "presumed for all purposes of Oklahoma law" that the Agency "[e]xist[s] as a legal entity separate and distinct from...the [State]." Id. § 176.1(A)(2).
2. Because Oklahoma Housing Finance Agency is a legal entity separate and distinct from the State and its trust estate is not made up of public funds, the provisions of Okla. Const. art. X, § 15 do not apply to expenditures of trust estate funds.
3. Even if Okla. Const. art. X, § 15 were applicable, expenditures from the Oklahoma Housing Finance Agency trust estate would be permissible so long as the State received consideration. A program to assist citizens displaced by a natural disaster in finding temporary housing would provide consideration by furthering the State purposes of mitigating homelessness, ensuring disaster preparedness, and protecting public peace, health, and safety in the in the wake of natural disaster. See, e.g., 74 O.S.2011, § 2900.1, 63 O.S.2011, § 683.2. 
Mike HunterAttorney 
General of Oklahoma
Malisa McPherson
Assistant Attorney General
FOOTNOTES
[1] OHFA's trust estate consists of (i) funds and property presently held or to be acquired by the Trustees that are dedicated to OHFA, (ii) leasehold rights remised to the Trustees as authorized by law, and (iii) any other money, property, or things of value acquired by the Trustees under the Trust Indenture. See Trust Indenture, art. VI, p. 11.
[2] Available at https://www.ok.gov/ohfa/documents/2016Financials.pdf (last visited May 8, 2017).
[3] In that Opinion, we also withdrew a previous Opinion that concluded Article X, Section 15 prohibited a public trust from making a gratuitous transfer to a charitable organization. Id. at 185. To the extent any such limitation existed, it would have been by virtue of the fiduciary duties of the trustees and not the fiscal restrictions of Article X, Section 15. Id.
[4] While OHFA administers the Oklahoma Housing Trust Fund, which may consist of public funds, our understanding is that this fund is separate from OHFA's trust estate. See 74 O.S.2011, § 2901.2.
[5] This case addressed the gift prohibition of Article X, Section 17, "which is the version of [Article X, Section 15] that applies to municipalities." Petition of Univ. Hosps. Auth., 1997 OK 162, ¶ 19, 953 P.2d 314, 320.

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2005 OK CIV APP 43, 118 P.3d 216, 
ORTHOPEDIC HOSPITAL OF OKLA. v. THE OKLA. STATE DEPT. OF HEALTH
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1989 OK 45, 771 P.2d 608, 60 OBJ 785, 
Burkhardt v. City of Enid
Discussed at Length

 
1946 OK 180, 171 P.2d 613, 197 Okla. 243, 
CHILDRENS HOME & WELFARE ASS'N v. CHILDERS
Discussed at Length

 
1955 OK 198, 285 P.2d 1034, 
BOARD OF COUNTY COMMISSIONERS v. WARRAM
Discussed

 
1932 OK 101, 9 P.2d 720, 156 Okla. 48, 
HAWKS v. BLAND
Discussed at Length

 
2007 OK 21, 158 P.3d 461, 
OKLAHOMA CITY ZOOLOGICAL TRUST v. STATE ex rel. PUBLIC EMPLOYEES RELATIONS BD.
Discussed

 
1976 OK 73, 551 P.2d 252, 
SHOTTS v. HUGH
Discussed

 
1997 OK 162, 953 P.2d 314, 69 OBJ 59, 
IN THE MATTER OF THE PETITION OF UNIVERSITY HOSPITALS AUTHORITY
Discussed

Title 25. Definitions and General Provisions

 
Cite
Name
Level

 
25 O.S. 304, 
Definitions
Cited

Title 60. Property

 
Cite
Name
Level

 
60 O.S. 176, 
Trusts for Benefit of State, County or Municipality - Approval - Expenditures - Bylaws - Amendments - Indebtedness - Bonds - Contracts
Discussed at Length

 
60 O.S. 179, 
Trustee - Agency of State - Liability
Cited

Title 63. Public Health and Safety

 
Cite
Name
Level

 
63 O.S. 683.2, 
Findings and Declarations
Discussed

Title 74. State Government

 
Cite
Name
Level

 
74 O.S. 2900.1, 
Definitions - Cooperation with Federal Government
Discussed

 
74 O.S. 2901.2, 
Creation of Oklahoma Housing Trust Fund - Administration
Cited

Title 75. Statutes and Reports

 
Cite
Name
Level

 
75 O.S. 250.5, 
Act Not to Apply to Certain Governments, Authorities, etc.
Cited