OSCN Found Document:Question Submitted by: The Honorable Chris Kannady, Oklahoma House of Representatives, District 91, The Honorable Stan May, Oklahoma House of Representatives, District 80

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: The Honorable Chris Kannady, Oklahoma House of Representatives, District 91, The Honorable Stan May, Oklahoma House of Representatives, District 80
2023 OK AG 15
Decided: 12/27/2023
Oklahoma Attorney General Opinions

Cite as: 2023 OK AG 15, __ __

 

¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Does a leave-sharing policy violate any provision of Oklahoma law, including article 10, section 14 of the Oklahoma Constitution?
2. May a municipality enact an ordinance that conflicts with the statutory right of members of a paid fire or police department to collectively bargain for the terms and conditions of their employment?
I.
SUMMARY
¶1 Neither the Oklahoma Constitution nor any other provision of law prohibit a charter municipality from establishing a leave-sharing program for members of a paid fire department or police department. First, whereas article X, section 14, of the Oklahoma Constitution requires all uses of public funds to be for public expenditures, "public purpose" is broadly interpreted with great deference to the Legislature. Here, the Legislature has declared, as a matter of statewide concern, that members of a paid fire department have a statutory right to collectively bargain for all terms of labor. Declaring this right to be a matter of statewide concern, the Legislature established a right to collectively bargain for all terms of labor in exchange for the public's guarantee of uninterrupted public fire protection services. Thus, the ability to agree to a leave-sharing program in a collective bargaining agreement reached among a municipality and members of a paid fire department satisfies article X, sections 14 and 17. Further, for multiple reasons detailed below, authorized leave-sharing programs for members of a municipal fire department do not violate the Oklahoma Constitution's prohibition on "gifts" (article X, section 15). In addition, because the rights of members of a fire department to collectively bargain for all terms of labor in exchange for uninterrupted fire and police public safety services is as a matter of statewide concern, and not purely municipal, a charter municipality may not enact or construe an ordinance which irreconcilably conflicts with these rights. Importantly, this conclusion does not deprive a charter municipality of the right to control employment matters or to concede to terms proposed during the parties' negotiations. City of Wewoka v. Rodman, 172 Okla. 630 (1935), 46 P.2d 334. While the members of the fire and police department are vested with the right to bargain collectively, the parties are required to come to the table in good faith negotiations. Therefore, the municipal employer retains the right to make the final decision on all employment issues so long as it bargains in good faith. Midwest City v. Cravens, 1975 OK 22, 532 P.2d 829; 11 O.S.2021, § 51-102 (defining "collective bargaining" to require good faith negotiating, but neither party is compelled to agree or confess to any one or more terms in the negotiation).

II.
BACKGROUND
¶2 In your request, you detail that the questions presented stem from the International Association of Firefighters ("IAFF") Local No. 176 having a longstanding request for the city of Tulsa ("City") to establish a leave-sharing program for employees of the City's Fire Department. According to your request, beginning in 1986 and continuing to this date, the City asserts that a leave-sharing policy violates article X, section 14 of the Oklahoma Constitution. However, you identify other leave-sharing programs authorized in Oklahoma statutes.[1] Your request also identifies municipalities in Oklahoma which have taken a position contrary to that of the City and have authorized employee leave-sharing programs. Accordingly, considering this background and with an apparent conflict present, this office will answer the questions of law presented.[2]

III.
DISCUSSION
A. Neither article 10, section 14 of the Oklahoma Constitution nor any other provision of Oklahoma law prohibits a charter municipality from establishing a "leave-sharing" policy for members of the municipal fire department. 
1. Article X, Section 14
¶3 Section 14 of article X of the Oklahoma Constitution sets forth, with exceptions not relevant here, that "taxes shall be levied and collected by general laws, and for public purposes only." OKLA. CONST. art. X, § 14(A) (emphasis added); see also Burkhardt v. City of Enid, 1989 OK 45, ¶ 8, 771 P.2d 608, 610 (stating that section 14 "restricts the use of public funds to expenditures for a public purpose"). The term "public purpose" is given a deferentially broad interpretation and is not to be construed in a narrow and restricted sense. State ex rel. Brown v. City of Warr Acres, 1997 OK 117, ¶ 18, 946 P.2d 1140, 1144. Indeed, "great deference" is given to a "legislative body's determination that a particular project serve[s] a public purpose," and that determination will be reversed "only upon a clear showing that it was manifestly arbitrary, capricious, or unreasonable." Id. As early as 1938, the Oklahoma Supreme Court stated:
The meaning of "public purposes" for which governmental exaction of money may be had is not within a narrow and restricted sense. At any rate the courts cannot interfere to arrest legislative action where the line of distinction between that allowable and that which is not is faint and shadowy. In such instances the decision of the Legislature is accepted as final.

Helm v. Childers, 1938 OK 34, ¶ 5, 75 P.2d 398, 399 (emphasis added).
¶4 The Oklahoma Supreme Court expressly affirmed this rule in Way v. Grand Lake Association, 1981 OK 70, ¶ 38, 635 P.2d 1010, 1016-17, holding that it is within the Legislature's province to decide what is a public purpose.[3] Additionally, the court in Way also placed importance on the fact that the statutory program involved governmental controls and safeguards for the disbursement of public monies. See also Democratic Party of Okla. v. Estep, 1982 OK 106, ¶ 14 n.19, 652 P.2d 271, 276 n.19 (the legislation in Way required the "legislative policy to be followed and defined the category of expenditures for which reimbursement could be sought. All claims of the multicounty organizations to be benefitted by that act were required to be processed through the state budget office, on state-approved claim forms and pursuant to an approved budget."). Accordingly, so long as the program is for the public good, such as supporting the function of government or providing a public benefit, and the public agency controls the funds, the use of funds will withstand scrutiny under article X, section 14. Helm, 1938 OK 34, ¶ 4, 75 P.2d 398, 399; Orthopedic Hosp. of Oklahoma v. Oklahoma State Dep't of Health, 2005 OK CIV APP 43, ¶ 7, 118 P.3d 216, 221 (citing Veterans of Foreign Wars v. Childers, 1946 OK 211, ¶¶ 18, 24, 171 P.2d 618, 622, 624).
¶5 This office previously concluded that public health, safety, and welfare services constitute a public purpose within the meaning of article X, section 14. 2004 AG OK 15. Under the prevailing view, providing benefits and funds for firemen is "generally sustained as a proper public purpose."[4] Wallace v. Childers, 1947 OK 171, ¶ 12, 180 P.2d 1005, 1008. The Legislature has established the right of members of any paid fire department or police department to collectively bargain for all terms of labor, except that they may not strike or engage in any work stoppage or slowdown.[5] 11 O.S.2021, § 51-101; see also 11 O.S.2021, § 51-103 (the rights of members of a fire and police department include "wages, salaries, hours, rates of pay, grievances, working conditions and all other terms and conditions of employment.")
¶6 The Legislature has directly entwined the right of members of a fire and police department to collectively bargain for all terms and conditions of employment with the public's receipt of guaranteed benefits.[6] The accord of the statutory right to collectively bargain for all terms of labor is essentially a quid pro quo for the prohibition of strikes by police and fire departments. Together, these statutes protect the public from interruption of essential health and safety services while recognizing the employees' right to engage in meaningful collective bargaining. Additionally, the right to collective bargaining is not without "conditions and governmental safeguards and controls." While the members of the fire and police department are vested with the right to bargain collectively, the municipal employer retains the right to make the final decision on all employment issues. Midwest City, 1975 OK 22, 532 P.2d 829; City of Mustang v. Fraternal Ord. of Police, Lodge 163, 2008 OK CIV APP 51, ¶ 17, 184 P.3d 1098, 1103 (citing City of Bethany v. Public Emps. Rels. Bd. of Okla., 1995 OK 99, ¶ 11, 904 P.2d 604, 609.) Furthermore, the parties are required to confer in good faith on terms and conditions of employment, and neither party is compelled to agree to a proposal or make a concession.[7] Midwest City, 1975 OK 22, ¶ 29, 532 P.2d at 833. In at least these two ways, the Legislature has ensured that the State receives benefits and maintains controls. Accordingly, a municipality can lawfully establish leave-sharing program for members of a paid fire or police department.[8]

2. Other relevant provisions of Oklahoma law
¶7 In addition to your question regarding article X, section 14, you more broadly ask whether leave-sharing policies violate any other provision of the Oklahoma Constitution. Closely related to the "public purpose" requirements in section 14, two other sections of article X operate as limitations on the use of public funds and are pertinent to resolving your questions. First, article X, section 15 of the Oklahoma Constitution provides, in pertinent part:
[T]he credit of the State shall not be given . . . to any individual . . . nor shall the State . . . make donation by gift . . . to any company, association, or corporation.
OKLA. CONST. art. X, § 15.
¶8 By its plain terms, section 15 prohibits the State from conferring gifts or donations upon private entities. For three reasons, an employee leave sharing program does not violate section 15. First, the State is not conferring anything.[9] Instead, an employee who earned the leave for services rendered is donating the earned leave to a colleague under established rules and procedures. Second, when a legislative body authorizes a public benefit, such as one consisting of longevity service awards, awards banquets or leave sharing among colleagues, to be for a "public purpose," section 15 is not violated if the program provides controls and safeguards similar to those required under the analysis for article X, section 14. 1987 OK AG 38. Finally, section 15 does not apply to municipalities; rather, by its plain language, section 15 solely applies to the State. Lawrence v. Schellstede, 1960 OK 10, ¶ 14, 348 P.2d 1078, 1081 (section 15 "is an inhibition upon the state, and not upon a municipality," citing Fretz v. City of Edmond, 1916 OK 516, 168 P. 800).[10] Accordingly, a leave-sharing program established by municipal employees of a paid fire or police department does not violate article X, section 15 of the Oklahoma Constitution.

B. An ordinance enacted by a charter municipality is invalid if it conflicts with the statutory rights of employees of any paid fire department to collectively bargain for all terms of labor and all terms and conditions of employment.
¶9 You next ask whether a leave-sharing policy violates the Tulsa City Charter.[11] Questions relating to a specific charter involve questions of fact and are outside the scope of an Attorney General opinion. 74 O.S.2021, § 18b(A)(5). However, more broadly interpreting your request--which permits this office to provide an answer--you ask, in effect, whether a charter municipality can prohibit employee leave-sharing programs by enacting an ordinance that conflicts with the statutory rights of members of a paid fire or police department to collectively bargain for the terms and conditions of their employment. Any such ordinance is unlawful because it conflicts with state legislation over matters of concern for the general public and impedes a municipality's ability to negotiate in good faith regarding leave-sharing programs and other benefits of employment.
¶10 The Oklahoma Constitution authorizes charter municipalities and includes any city with a population exceeding two thousand inhabitants that has adopted a charter "for its own government, consistent with and subject to the Constitution and laws of this State." OKLA. CONST. art. XVIII, § 3(a). Charter municipalities are also defined in Oklahoma statutes as "any municipality which has adopted a charter in accordance with the provisions of the Constitution and laws of Oklahoma and at the time of adoption of the charter had a population of two thousand (2,000) or more." 11 O.S.2021, § 1-102.
¶11 Charter provisions serve as the organic law of the municipality. They may supersede conflicting state statutes only regarding matters of purely local concern. However, charter provisions cannot contradict state constitutional provisions and will not prevail over conflicting state statutes that concern matters of statewide public interest. See City of Tulsa v. Public Emps. Rels. Bd., 1990 OK 114, ¶ 9, 845 P.2d 872, 875; Moore v. City of Tulsa, 1977 OK 43, ¶ 2, 561 P.2d 961, 963; State ex rel. Burns v. Linn, 1915 OK 1037, ¶ 6, 153 P. 826, 828. "Legislative dominion over the scope of general public concern is by the State denied to all municipal governments." Morehead v. Dyer, 1973 OK 121, ¶ 8, 518 P.2d 1105, 1107 (emphasis added). Accordingly, the Legislature has reserved for itself the authority to regulate matters of general public concern or interest, and municipal ordinances conflicting with state laws regarding general public concern or interest are superseded by the state laws.
¶12 Matters of local concern in Oklahoma include the removal of a municipal judge, street parking, recall elections of municipal officers, widening of a state highway within city limits, and the form of city government adopted by a municipality. Lee v. Norick, 1968 OK 173, 447 P.2d 1015; City of Ponca City v. Edwards, 1969 OK 149, 460 P.2d 418; Moorehead, 1973 OK 121, 518 P.2d 1105, Moore Funeral Homes v. City of Tulsa, 1976 OK 96, 552 P.2d 702; Farmer v. City of Sapulpa, 1982 OK 58, 645 P.2d 518. In contrast, two cases involving the city of Tulsa hold that municipality personnel policies are not solely matters of local concern and may involve issues of statewide interest. In Reed v. City of Tulsa, the Oklahoma Supreme Court struck Tulsa's claim that personnel policies are purely a local concern and instead held that statutes requiring no loss of pay while firefighters are in active service were established under matters of statewide interest. Reed v. City of Tulsa, 1977 OK 159, 569 P.2d 451. The same was true in City of Tulsa v. Taylor when a police officer and member of the National Guard filed a petition against the city of Tulsa, challenging the validity of certain provisions of personnel policies and procedures pertaining to pay for city employees while on military reserve duty. City of Tulsa v. Taylor, 1976 OK CIV APP 42, ¶ 15, 555 P.2d 885, 888. There, the Court made clear that a "leave policy as set out by state statutes . . . is a statewide benefit granted by the Legislature to all persons who recognize a duty to serve their State and Country in the Armed Services; thus, cannot be taken away by a city." Id. (citation omitted). Furthermore, the Legislature has expressly stated the rights of members of a paid fire department and police department as follows:
A. The protection of the public health, safety and welfare demands that the permanent members of any paid fire department or police department in any municipality not be accorded the right to strike or engage in any work stoppage or slowdown. This necessary prohibition does not, however, require the denial to such employees of other well-recognized rights of labor such as the right to organize, to be represented by a collective bargaining representative of their choice and the right to bargain collectively concerning wages, hours and other terms and conditions of employment; and such employees shall also have the right to refrain from any and all such activities.
B. It is declared to be the public policy of this state to accord to the permanent members of any paid fire department or police department in any municipality all of the rights of labor, other than the right to strike or to engage in any work stoppage or slowdown.
11 O.S.2021, § 51-101 (emphasis added); Midwest City, 1975 OK 22, 532 P.2d 829; see also 11 O.S.2021, § 51-103. Thus, the right of fire and police departments' members to collectively bargain for all terms of labor in exchange for uninterrupted fire and police public safety services is a matter of statewide concern. Accordingly, if a charter municipality enacts an ordinance that irreconcilably conflicts with these matters of statewide concern, the ordinance must cede to the state statutes.
¶13 An ordinance and state statute will only be characterized as conflicting if it contains express or implied inconsistent and irreconcilable conditions. Hampton v. Hammons, 1987 OK 77, ¶ 26, 743 P.2d 1053, 1059--60; State ex rel. Trimble v. City of Moore, 1991 OK 97, ¶ 29, 818 P.2d 889, 898. "There is no conflict if one is silent on the issue and the other speaks to it." Id., 1991 OK 97, ¶ 29, 818 P.2d at 898. If a city has a charter that does not speak to the issue of leave-sharing programs for employees, then there is no irreconcilable conflict.[12] If, however, a city charter or any other municipal ordinance prohibits the right to collectively bargain, including prohibiting a term or condition from being agreed to in the parties' negotiations, then an irreconcilable conflict exists and the ordinance must cede to the state statutes. Similarly, it is improper to construe a city charter in a manner that prohibits or conflicts with a state statute if the statute is an issue of statewide concern. Members of a paid fire department and police department are vested with the right to collectively bargain for all terms of labor and all other terms and conditions of employment, including leave and leave sharing. This does not deprive a charter municipality of the right to control employment matters or to concede to terms proposed during the parties' negotiations. City of Wewoka, 172 Okla. 630 (1935), 46 P.2d 334; see also note 7, supra, citing 51 O.S.2021, § 51-102. Stated otherwise, the municipal governing body must come to the bargaining table and negotiate in good faith, but it does not have to agree to the terms presented by the fire department through its collective voice. Id.[13] Consistent with the analysis under article X, section 14, any established leave-sharing programs must feature reasonable controls and adequate safeguards, such as those relating to accruals and procedures for an employee to use and donate any of their earned leave.[14]

¶14 It is, therefore, the official Opinion of the Attorney General that:

1. The Legislature has declared it to be a matter of statewide concern for members of a fire department and police department to have the right to collectively bargain for all terms of labor and all other terms and conditions of employment. Leave-sharing programs established through collective bargaining agreements do not violate any provision of Oklahoma law, including article X, section 14 of the Oklahoma Constitution if properly established with reasonable controls and adequate safeguards relating to the accrual and use of shared leave. 
2. Any ordinance adopted or construed by a charter municipality to conflict with these rights must cede to the statutorily vested rights of the officers providing these public health and safety services.

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
TRACY E. NEEL
ASSISTANT ATTORNEY GENERAL

FOOTNOTES
[1] 74 O.S.Supp.2022, § 840-2.23; 70 O.S.Supp.2023, § 6-104.6.
[2] 74 O.S.Supp.2022, § 18b(A)(5).
[3] See also Oklahoma City News Broad. Ass'n v. Nigh, 1984 OK 31, ¶ 13, 683 P.2d 72, 76 ("We hold that whether such appropriation is for a 'public purpose' is for determination by the Legislature unless it is clearly shown to be for a purpose expressed by the Legislature in violation of the Constitution." (Emphasis added.))
[4] Additionally, the Oklahoma Supreme Court has determined that a legislative appropriation to establish and maintain a public employee pension fund is a public purpose and not in violation of article X, section 14. Wallace, 1947 OK 171, ¶¶ 10--14, 180 P.2d 1005, 1008; Taylor v. State and Educ. Emps. Grp. Ins. Program, 1995 OK 51, 897 P.2d 275 (holding that public employees' retirement funds are trust funds and a transfer of public funds from one public employee retirement system to another did not violate article X, section 14.); see also 74 O.S.Supp.2022, § 840-2.23; 70 O.S.Supp.2023, § 6-104.6 and established leave-sharing programs among Oklahoma City Fire Department Collective Bargaining Agreement, 2018-19 and 2022-23 (on file with author).
[5] Legislation is strongly presumed to be constitutional. A reviewing court must uphold a statute "unless it is clearly, palpably and plainly inconsistent with fundamental law. Taylor v. State and Educ. Employees Group Ins. Program, 1995 OK 51, ¶ 6, 897 P.2d 275, 277.
[6] It is assumed that if the Legislature authorizes an expenditure, then "[i]t is conceivable that a public benefit may be derived as a result of the legislation." Helm, 1938 OK 34, ¶ 5, 75 P.2d 398, 399.
[7] The term "collectively bargain" is defined as:
[T]he performance of the mutual obligation of the municipal employer or his designated representatives and the representative of the employees to meet at reasonable times, including meetings appropriately related to the budget-making process; to confer in good faith with respect to wages, hours and other conditions of employment, or the negotiation of an agreement, or any question arising thereunder; and to execute a written contract incorporating any agreement reached if requested by either party. Such obligation shall not, however, compel either party to agree to a proposal or require the making of a concession.
11 O.S.2021, § 51-102 (emphasis added).
[8] You also inquire whether the type of leave (vacation, sick, or other) affects whether a leave-sharing policy is constitutional. The type of leave within a leave-sharing program is irrelevant to its constitutionality. Instead, the focus is on whether the leave satisfies the constitutional requirements, including under article X, section 14, rather than what the employee does with it once it has been earned. 1987 OK AG 38. Further, subject to limitations not relevant here, nothing prohibits an employee from sharing leave that the employee has already earned.
[9] Employers granting vacations and other types of leave does not confer gifts upon their employees; rather, the promised rewards are conditions of employment. Notwithstanding policies and procedures or other established employer controls on leave, generally, once earned, what an employee does with their earned leave--whether using it for vacation, time away due to illness, or sharing it with another employee with a demonstrated need pursuant to an agency-controlled leave-sharing program--is within the employee's discretion.
[10] Article X, section 17 of the Oklahoma Constitution has been labeled "the version of Art. 10, § 15 that applies to municipalities." In re Univ. Hosps. Auth., 1997 OK 162, ¶ 19, 953 P.2d 314, 320. Instructively, the Oklahoma Supreme Court has determined expenditures that result in a public use or purpose are not prohibited by article X, section 17. Willow Wind, Inc. v. City of Midwest City, 1989 OK 171, ¶ 7, 790 P.2d 1067, 1070. Accordingly, having already determined that a municipality's established leave-sharing program for members of a police or fire department provides a public purpose, this office also concludes that such a program does not violate article X, section 17.
[11] Oklahoma recognizes five different statutory forms of municipal government. In title 11 of the Oklahoma Statutes, the first four types are governed entirely by statutory provisions, and a fifth type is governed, at least in part, by terms of the municipal charter. These forms of municipal government are as follows:
1. Statutory aldermanic form of city government (11 O.S.2021, §§ 9-101 to 18);
2. Statutory council-manager form of city government (11 O.S.2021, §§ 10-101 to 21);
3. Statutory strong-mayor-council form of city government (11 O.S.2021, §§ 11-101 to 25);
4. Statutory town board of trustees (11 O.S.2021, §§ 12-101 to 14); and
5. Municipal charter form of government (11 O.S.2021, §§ 13-101 to 15).

[12] The City's charter does not expressly speak to the issue of leave-sharing programs for employees.
[13] If the municipality has already ruled out the possibility of a leave-sharing program, either by ordinance or via municipality charter, then the municipality has prematurely limited the possibilities available at the negotiations table. This unlawfully limits the rights of a fire department or police department to collectively bargain for all terms of labor and conditions of employment in direct contradiction with State Law. Additionally, such a prohibition impedes the ability of the municipality to negotiate all terms and conditions of employment in good faith.
[14] For example, the authorization for state employee leave sharing requires an eligible employee to demonstrate need for the leave and include a medical certificate from a licensed physician or other health care practitioner. 74 O.S.2021, § 840-2.23. Additionally, the employee must exhaust all forms of paid leave prior to using donated leave, the chief administrative officer of the employee is required to approves the leave, and there are caps on the amount of donated leave that can be used. Id. Another example of a potential safeguard for a shared-leave program comes from the State of Washington where "[i]n transferring leave from the donor [employee] to the donee [employee], it is the donor's dollar value of the leave that transfers and purchases shared leave for the donee at the donee's salary rate." Wash. Off. Fin. Mgmt., State Administrative and Accounting Manual 176--77 (Oct. 1, 2023), https://ofm.wa.gov/accounting/saam. As such, if a $100/hour employee donated an hour of leave to a $20/hour employee, the receiving employee would have five hours of leave available. Conversely, if the $20/hour employee was to donate leave, he would need to donate five hours of leave for the $100/hour employee to receive a single hour of leave. See id. at 176--77.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
1987 OK AG 38, 
Question Submitted by: The Honorable Dave Herbert, Oklahoma State Senate
Discussed

Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2005 OK CIV APP 43, 118 P.3d 216, 
ORTHOPEDIC HOSPITAL OF OKLA. v. THE OKLA. STATE DEPT. OF HEALTH
Discussed

 
2008 OK CIV APP 51, 184 P.3d 1098, 
CITY OF MUSTANG v. FRATERNAL ORDER OF POLICE
Discussed

 
1976 OK CIV APP 42, 555 P.2d 885, 
CITY OF TULSA v. TAYLOR
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1987 OK 77, 743 P.2d 1053, 58 OBJ 2210, 
Hampton v. Hammons
Discussed

 
1989 OK 45, 771 P.2d 608, 60 OBJ 785, 
Burkhardt v. City of Enid
Discussed

 
1989 OK 171, 790 P.2d 1067, 61 OBJ 22, 
Willow Wind, Inc. v. City of Midwest City
Discussed

 
1990 OK 114, 845 P.2d 872, 61 OBJ 2895, 
City of Tulsa v. Public Employees Relations Bd.
Discussed

 
1991 OK 97, 818 P.2d 889, 62 OBJ 2887, 
State ex rel. Trimble v. City of Moore
Discussed at Length

 
1938 OK 34, 75 P.2d 398, 181 Okla. 535, 
HELM v. CHILDERS
Discussed at Length

 
1947 OK 171, 180 P.2d 1005, 198 Okla. 604, 
WALLACE v. CHILDERS
Discussed at Length

 
1915 OK 1037, 153 P. 826, 49 Okla. 526, 
STATE ex rel. BURNS v. LINN
Discussed

 
1946 OK 211, 171 P.2d 618, 197 Okla. 331, 
VFW v. CHILDERS
Discussed

 
1916 OK 516, 168 P. 800, 66 Okla. 262, 
FRETZ v. CITY OF EDMOND et al.
Discussed

 
1960 OK 10, 348 P.2d 1078, 
LAWRENCE v. SCHELLSTEDE
Discussed

 
1968 OK 173, 447 P.2d 1015, 
LEE v. NORICK
Discussed

 
1995 OK 51, 897 P.2d 275, 66 OBJ 1835, 
Taylor v. State and Educ. Employees Group Ins. Program
Discussed at Length

 
1969 OK 149, 460 P.2d 418, 
CITY OF PONCA CITY v. EDWARDS
Discussed

 
1995 OK 99, 904 P.2d 604, 66 OBJ 3071, 
City of Bethany v. Public Employees Relations Bd. of State of Okl.
Discussed

 
1973 OK 121, 518 P.2d 1105, 
MOREHEAD v. DYER
Discussed at Length

 
1975 OK 22, 532 P.2d 829, 
MIDWEST CITY v. CRAVENS
Discussed at Length

 
1976 OK 96, 552 P.2d 702, 
MOORE FUNERAL HOMES, INC. v. CITY OF TULSA
Discussed

 
1977 OK 43, 561 P.2d 961, 
MOORE v. CITY OF TULSA
Discussed

 
1977 OK 159, 569 P.2d 451, 
REED v. CITY OF TULSA
Discussed

 
1981 OK 70, 635 P.2d 1010, 
Way v. Grand Lake Ass'n, Inc.
Discussed

 
1997 OK 117, 946 P.2d 1140, 68 OBJ 3092, 
STATE ex rel. BROWN v. CITY OF WARR ACRES
Discussed

 
1997 OK 162, 953 P.2d 314, 69 OBJ 59, 
IN THE MATTER OF THE PETITION OF UNIVERSITY HOSPITALS AUTHORITY
Discussed

 
1982 OK 58, 645 P.2d 518, 
Farmer v. City of Sapulpa
Discussed

 
1982 OK 106, 652 P.2d 271, 
Democratic Party of Oklahoma v. Estep
Discussed

 
1984 OK 31, 683 P.2d 72, 55 OBJ 1128, 
Oklahoma City News Broadcasters Ass'n, Inc. v. Nigh
Discussed

Title 11. Cities and Towns

 
Cite
Name
Level

 
11 O.S. 1-102, 
Definitions
Cited

 
11 O.S. 9-101, 
Statutory Aldermanic Form of Government
Cited

 
11 O.S. 10-101, 
Statutory Council-Manager Form of Government
Cited

 
11 O.S. 11-101, 
Strong-Mayor-Council Form of Government
Cited

 
11 O.S. 12-101, 
Statutory Town Board of Trustees Form of Government
Cited

 
11 O.S. 13-101, 
Municipalities May Adopt Charter
Cited

 
11 O.S. 51-101, 
Public Policy of Fire and Police Arbitration Law
Discussed

 
11 O.S. 51-102, 
Definitions
Discussed

 
11 O.S. 51-103, 
Collective Bargaining Rights - Bargaining Agent - Elections
Discussed

Title 70. Schools

 
Cite
Name
Level

 
70 O.S. 6-104.6, 
Establishment of Leave Sharing Program - Eligibility - Donation
Discussed at Length

Title 74. State Government

 
Cite
Name
Level

 
74 O.S. 18b, 
Duties of Attorney General - Counsel of Corporation Commission as Representative on Appeal From Commission
Discussed